## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OMNI MEDSCI, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> WHOOP, INC., <br><br> *Defendant*. | C.A. No. 25- <br><br> JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Omni MedSci, Inc., by and through its undersigned counsel, files this Complaint against Defendant Whoop, Inc. for infringement of United States Patent Nos. 9,055,868 (the "'868 Patent"), 9,651,533 (the "'533 Patent"), 10,517,484 (the "'484 Patent"), 10,874,304 (the "'304 Patent"), 11,160,455 (the "'455 Patent"), and 12,193,790 (the "'790 Patent") (collectively, the "Asserted Patents"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action for infringement of the Asserted Patents arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*, to obtain damages and injunctive relief resulting from Defendant's unauthorized actions of making, having made, using, selling, having sold, offering to sell, importing, or having imported into the United States products that infringe directly and indirectly one or more claims of the Asserted Patents.

## THE PARTIES

2.      Plaintiff Omni MedSci, Inc. ("Omni MedSci" or "Plaintiff") is a corporation organized and existing under the laws of the state of Michigan with a place of business at 1718 Newport Creek Drive, Ann Arbor, Michigan 48103.

1

3.     Defendant Whoop, Inc. ("Whoop" or "Defendant") is a corporation organized and existing under the laws of Delaware.

4.     Whoop has a principal place of business at One Kenmore Square, Boston, Massachusetts 02215.

5.     Whoop can be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

6.     Whoop designs, manufactures, makes, uses, markets, offers to sell, sells, and/or imports smart wearable devices configured to measure physiological parameters, including products accused of infringement in this Complaint, into the United States, including this Judicial District. In addition, Whoop has authorized sellers and sales representatives in the United States and in this Judicial District that offer to sell and sell products pertinent to this Complaint.

## JURISDICTION AND VENUE

7.     Jurisdiction and venue for this action are proper in this Judicial District.

8.     This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.     This Court has personal jurisdiction over Defendant because Defendant is incorporated in Delaware.

10.     This Court also has personal jurisdiction over Defendant at least because, through Defendant's own acts, Defendant (i) has purposefully availed itself of the rights and benefits of the laws of the State of Delaware and this Judicial District; (ii) has done and is doing substantial business in the State of Delaware and this Judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint,

including its one or more acts of infringement in the State of Delaware and this Judicial District; (iii) maintains continuous and systematic contacts in the State of Delaware and this Judicial District; and/or (iv) places products alleged to be infringing in this Complaint in the stream of commerce, directly or through intermediaries, with awareness that those products are likely destined for use, offer for sale, sale, and/or importation in the State of Delaware and this Judicial District.

11.    For example, Defendant has authorized retailers and distributors in the State of Delaware and this Judicial District for the products alleged to be infringing in this Complaint, and Defendant has derived substantial revenues from their infringing acts occurring within the State of Delaware and this Judicial District.

12.    Defendant has established sufficient minimum contacts with the State of Delaware and this Judicial District such that it should reasonably and fairly anticipate being brought into court in the State of Delaware, including this Judicial District, without offending traditional notions of fair play and substantial justice; and Defendant has purposefully directed activities at residents of the State of Delaware, including this Judicial District. Moreover, the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities. On information and belief, a substantial part of the events giving rise to Plaintiff's claims, including Defendant's acts of patent infringement, have occurred in the State of Delaware, including this Judicial District.

13.    Venue is proper in this Judicial District as to Defendant under 28 U.S.C. § 1400(b) because Defendant is incorporated in the State of Delaware and resides in Delaware.

## BACKGROUND

### Dr. Mohammed Islam and Omni MedSci, Inc.

14.     Dr. Islam received a B.S. degree in 1981, an M.S. degree in 1983, and a Sc.D. degree in 1985, all in electrical engineering, from the Massachusetts Institute of Technology in Cambridge.

15.     Early in his career, Dr. Islam was a member of the Technical Staff in the Advanced Photonics Department at AT&T Bell Laboratories in Holmdel, N.J.

16.     Dr. Islam joined the Electrical and Computer Engineering department at the University of Michigan in Ann Arbor in 1992, where he remains today as a full tenured Professor of Optics and Photonics.

17.     Dr. Islam is also a Professor of Biomedical Engineering, a joint department in both the College of Engineering and the Medical School at the University of Michigan.  He was previously a faculty member with the University of Michigan Medical School's Department of Internal Medicine.

18.     From 1981 to 1985, Dr. Islam was a Fannie and John Hertz Fellow.  In 1992, Dr. Islam was awarded the OSA Adolf Lomb Medal for pioneering contributions to nonlinear optical phenomena and all-optical switching in optical fibers.  He also received the University of Michigan research excellence award in 1997.  In 1998, Dr. Islam became a Fellow of the Optical Society of America and received the Texas eComm Ten Award for being one of the 10 most influential people in Texas's digital economy in 2002.  Dr. Islam became a fellow of the IEEE in 2004 and was the first recipient of the prestigious 2007 Distinguished University Innovator Award.

19.     Dr. Islam has published over 135 papers in refereed journals, authored three books has written several book chapters, and has been an invited speaker at over 80 conferences and

symposia on issues related to his research. He is also the named inventor on over 200 U.S. patents, including the Asserted Patents.

20.     With an entrepreneurial spirit, Dr. Islam founded Omni MedSci in 2010 to help people by commercializing his optical technology innovations with healthcare and medicinal applications.

21.     In 2015, Omni MedSci received the Eureka Award for being the #1 most Innovative Company in Michigan.

22.     By 2012, Dr. Islam had invented technology for using light sources and other components in wearable measurement devices that are capable of detecting and monitoring physiological parameters for use in various applications, including the medical and healthcare fields.

23.     On December 31, 2012, Omni MedSci filed a set of patent applications covering its developments using light sources for medical and other applications.

24.     The Asserted Patents result from extensive research and development by Dr. Islam on behalf of Omni MedSci.

## THE ASSERTED PATENTS

### U.S. Patent No. 9,055,868

25.     On June 16, 2015, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 9,055,868 entitled "System and Method for Voice Control of Medical Devices." The '868 Patent is attached as Exhibit 1.

26.     Plaintiff is the assignee of all rights, title, and interest in and to the '868 Patent and, at a minimum, of all substantial rights in the '868 Patent, and possesses all rights of recovery,

whether legal or equitable, under the '868 Patent, including the right to recover damages for past infringement.

27.    The '868 Patent is valid and enforceable.

28.    The disclosed and claimed inventions of the '868 Patent provide improvements over prior art optical diagnostic systems by way of providing, *inter alia*, a control system remote from an optical measurement device associated with a user that can wirelessly receive and transmit measured physiological information associated with the user and that can receive both voice input and manually entered input. (*See* '868 Patent at 1:39–63.) The claimed inventions also include a host capable of receiving, storing, and processing wireless data transmitted by the control system. The host provides for generating and storing status information of the user and can also communicate the information to remote display devices. (*See id*. at 1:63–2:33.) Thus, the inventions of the '868 Patent provide greater flexibility and convenience in the operation and/or control of physiological measurement devices at remote locations as well as enhanced data processing, storage, and display capabilities at a variety of locations.

29.    The asserted claims of the '868 Patent comprise at least the following physical components: a light source comprising one or more semiconductor diodes generating an input light beam and a lens system configured to communicate a portion of the input light beam onto a part of a user's body comprising blood for use in a measurement on the user; a software application associated with a control system for generating data representing physiological information based in part on the measurement; the control system having a touch-screen, voice and manual inputs capabilities, and circuitry for obtaining position information from a location sensor and a wireless transceiver; and a host comprising a digital file for storing wireless data, control logic to process the wireless data to generate a stats of the user, and an output for communicating a portion of the

status or associated information of a communication link to one or more remotely located display output devices (*see* Claim 7). Certain asserted claims further recite additional physical characteristics, including, for example, the input light beam being adapted for use in blood diagnostics comprising a spectroscopic procedure (*e.g.*, Claim 9). Thus, the asserted claims of the '868 Patent are each directed to a physical system and are not directed to an abstract idea.

30.     The inventions of the asserted claims of the '868 Patent provide the capability of non-invasive optical measurement of physiological parameters associated with a user and storage and further processing of such physiological information by a wirelessly connected control system, as well as the further processing and storage capabilities of a host system enabled to also communicate the information for display on one or more remote display devices. The asserted dependent claims further recite light source details particularly suited to diagnostic measurements of interest. These elements provide for the unique and unconventional application of optical diagnostics, communications and control technology to provide more capable and useful non-invasive diagnostic systems for measuring physiological parameters of a user.

31.     Thus, the asserted claims of the '868 Patent are directed to specific improvements to systems for non-invasive monitoring of physiological parameters. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '868 Patent.

**U.S. Patent No. 9,651,533**

32.     On May 16, 2017, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 9,651,533 entitled "Short-Wave Infrared Super-

7

Continuum Lasers for Detecting Counterfeit or Illicit Drugs and Pharmaceutical Process Control." The '533 Patent is attached as Exhibit 2.

33.     Plaintiff is the assignee of all rights, title, and interest in and to the '533 Patent and, at a minimum, of all substantial rights in the '533 Patent and possesses all rights of recovery, whether legal or equitable, under the '533 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

34.     The '533 Patent is valid and enforceable.

35.     The '533 Patent discusses an unmet need for non-invasive physiological measurement devices, systems, and techniques for measuring human physiological information and blood constituents such as glucose (e.g., monitoring glucose without drawing blood). (*See* '533 Patent at 3:47–61.) The '533 Patent explains that conventional non-invasive systems failed to provide adequate sensitivity, selectivity, and repeatability of measurement results. (*See id*. at 3:61–63.) It discloses techniques and wearable measurement devices that use brighter light sources outputting optical beams that include near-infrared wavelengths to increase the signal level from blood constituents. (*See id*. at 5:35–47.) Devices disclosed in the specification include a lens system for receiving an output beam and delivering an analysis output beam to a sample, and a receiver for detecting and processing a portion of the analysis output beam reflected from the sample. (*See id*. at 5:47–54.) The '533 Patent discloses other techniques, such as using pattern matching in spectral fingerprinting and software techniques, to more reliably identify different constituents in the blood. (*Id*. at 4:18–28.)

36.     The '533 Patent further discloses the capability to provide value-add services by wirelessly communicating the monitored data to a personal device such as a smartphone, and then wirelessly communicating the processed data to the cloud for storing, processing, and transmitting

to several locations. In the disclosed system, the personal device is configured to receive and process at least a portion of the output signal, to store and display the processed output signal, and to transmit at least a portion of the processed output signal over a wireless transmission link. (*See id*. at 5:54–6:3 and 26:27–56.)

37.    The asserted claims of the '533 Patent comprise at least the following physical components: a light source comprising light emitting diodes for generating an output optical beam with one or more optical wavelengths including at least a portion being in the wavelength range of between 700 and 2500 nanometers, a plurality of lenses receiving a portion of the output optical beam an delivering an analysis output beam to a sample, a receiver to receive and process a portion of the analysis output beam reflected from the sample to generate an output signal, a personal device configured to receive and process a portion of the output signal and to store and display the processed output signal, and a remote device configured to receive a wirelessly transmitted output status comprising a portion of the processed output signal and to process the received output status (*e.g.*, Claims 11 and 12). The asserted claims also include one or more filters of the receiver in front of one or more detectors to select a fraction of the one or more wavelengths (Claim 11) or the capability to generate the output signal in part by comparing signals at different optical wavelengths (Claim 12). Thus, the asserted claims of the '533 Patent are each directed to a physical system and are not directed to an abstract idea.

38.    The asserted claims of the '533 Patent further recite the capability of increasing the signal-to-noise ratio by increasing light intensity from at least one of the semiconductor sources and by increasing the pulse rate of at least one of the semiconductor sources, as well as the capability to synchronize the receiver with the light source. These elements provide for the unique and unconventional application of signal processing to generate and measure signals with a greater

signal-to-noise ratio than the prior art, yielding more accurate and reliable non-invasive measurements of physiological parameters of a user.

39.     Thus, the asserted claims of the '533 Patent are directed to specific improvements to systems for non-invasive monitoring of physiological parameters. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '533 Patent.

**U.S. Patent No. 10,517,484**

40.     On December 31, 2019, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 10,517,484 entitled "Semiconductor Diodes-Based Physiological Measurement Device with Improved Signal-to-Noise Ratio."  The '484 Patent is attached as Exhibit 3.

41.     Plaintiff is the assignee of all rights, title, and interest in and to the '484 Patent and, at a minimum, of all substantial rights in the '484 Patent, and possesses all rights of recovery, whether legal or equitable, under the '484 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

42.     The '484 Patent is valid and enforceable.

43.     The asserted claims of the '484 Patent are directed to an improved system for measuring one or more physiological parameters via light reflected from bodily tissue.

44.     The '484 Patent explains that at the time of its priority date, there was an unmet need for non-invasive measurement of physiological metrics with sufficient sensitivity, selectivity, and repeatability due to the challenges with the non-invasive technology at the time in identifying and distinguishing between the various substances that compose and surround human tissue.  (*See*

'484 Patent at 2:57–3:15.)  The disclosed and claimed inventions of the '484 Patent provide improvements over prior art measurement systems by way of, inter alia, synchronizing a detection system to a light source, increasing the intensity and pulse rate of the emitted light from a baseline level, and comparing a first signal generated responsive to the light detected when the light source is on to a second signal generated responsive to the light detected when the light source is off.

45.    For example, the '484 Patent teaches that by increasing the light intensity of the light source, the signal-to-noise level measured by the detection system from particular blood constituents over others is increased.  (*Id.* at 3:16–23, 15:49–55.)  It further discloses that increasing the pulse rate and synchronizing the detection system to the light source allows for measurement at a particular frequency while phase locked to a particular signal, enabling the detection system to reject background signals and increase the signal-to-noise ratio of the measured signal.  (*Id.* at 15:66–16:8.)  The '484 Patent further teaches that modulating the light source between on and off, while the detection system measures the light at each change, and comparing the measurements before and after a change allows the system to account for changes in ambient light (such as from changing exposure to sunlight or changing weather patterns), thereby increasing the signal-to-noise ratio of the measured signal.  (*Id.* at 16:61–17:13.)

46.    The '484 Patent also discloses pattern matching and other software techniques for improved identification of different blood constituents, as well as value-add services that may be provided by wirelessly communicating the monitored data to a handheld device such as a smartphone, and then wirelessly communicating the processed data to the cloud for storing, processing, and transmitting to several locations. (*See, e.g.*, *id.* at 3:23–30, 12:44–67, 14:64–15:7 and 32:25–34:22.)

47. The asserted claims of the '484 Patent comprise at least the following physical components: a user wearable device; semiconductor sources of light, one or more lenses, detectors, an analog to digital converter, a smartphone or tablet comprising a wireless receiver, a wireless transmitter, a display, a speaker, a button or knob, a microprocessor, and a touch screen; and a cloud computing platform. The one or more lenses deliver a lens output light to tissue. The detection system is configured to be synchronized to the light source and its spatially separated detectors are configured to receive output light reflected from the tissue and generate an output signal indicative of one or more physiological parameters. At least one analog to digital converter is coupled to the detectors. The smartphone or tablet is configured to receive and process a portion of the output signal, and the cloud is configured to receive over a wireless transmission link an output status comprising the portion of the processed output signal and to process the received output status. (*See*, *e.g.*, '484 Patent, Claims 3 and 8.) Thus, the asserted claims of the '484 Patent are each directed to a physical system and are not directed to an abstract idea.

48. The asserted claims of the '484 Patent further recite the capability of increasing the signal-to-noise ratio by increasing light intensity and pulse rate of at least one of the semiconductor sources, as well as the capability to increase the signal-to-noise ratio by comparing a first signal generated responsive to light received while the semiconductor sources are off to a second signal generated responsive to light received while at least one of the semiconductor sources is on. (*Id.*) The wearable device of the asserted claims also has the capability to identify an object and to compare a property of the output signal to a threshold. (*Id.*) These elements provide for the unique and unconventional application of signal processing to generate and measure signals with a greater signal-to-noise ratio than the prior art, yielding more accurate and reliable non-invasive

measurements of physiological parameters and identification of objects such as blood constituents of a user.

49.     Certain of the asserted claims of the'484 Patent include additional elements that provide further beneficial enhancements, including an amplifier coupled to the detectors to improve detection sensitivity (*e.g.*, Claims 3 and 9), and/or that the wearable device is configured to use artificial intelligence for processing the output signal (*e.g.*, Claim 10).

50.     Thus, the asserted claims of the '484 Patent are directed to specific improvements to systems for non-invasive monitoring of physiological parameters. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '484 Patent.

### U.S. Patent No. 10,874,304

51.     On December 29, 2020, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 10,874,304 entitled "Semiconductor Source Based Near Infrared Measurement Device with Improved Signal-to-Noise Ratio." The '304 Patent is attached as Exhibit 4.

52.     Plaintiff is the assignee of all rights, title, and interest in and to the '304 Patent and, at a minimum, of all substantial rights in the '304 Patent, and possesses all rights of recovery, whether legal or equitable, under the '304 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

53.     The '304 Patent is valid and enforceable.

54.    The '304 Patent is related through a chain of continuation applications to the '484 Patent and discloses and expands upon at least the same inventive solutions to technical challenges associated with non-invasive physiological parameters.

55.    The asserted claims of the '304 Patent comprise at least the following physical components: a light source comprising semiconductor sources for generating an optical beam; a device for generating and delivering an input optical beam / analysis output beam to a sample or tissue; and a receiver or measurement device configured to capture a portion of the optical beam reflected from the sample or tissue and to generate an output signal representing a non-invasive measurement on blood contained within the sample or tissue (*e.g.*, Claims 1, 11, and 19). Certain claims also include a smartphone or tablet configured to receive and process a portion of the output signal, store and display the processed output signal, and wirelessly transmit a portion of the processed output signal, as well as a cloud computing platform configured to receive a portion of the wirelessly transmitted processed output signal and to process and store the resulting processed data (*e.g.*, Claims 1 and 11). Thus, the asserted claims of the '304 Patent are each directed to a physical system or device and are not directed to an abstract idea.

56.    The asserted claims of the '304 Patent further recite the capability of increasing the signal-to-noise ratio by increasing the light intensity of or modulating light sources, or by differencing a first signal generated responsive to light received while the semiconductor sources are off and a second signal generated responsive to light received while at least one of the semiconductor sources is on (*e.g.*, Claims 1, 11, and 19). These elements provide for the unique and unconventional application of signal processing to generate and measure signals with a greater signal-to-noise ratio than the prior art, yielding more accurate and reliable non-invasive measurements of physiological parameters associated with the blood of a user.

57.     Certain of the asserted claims of the '304 Patent include additional elements that provide further beneficial enhancements, such as particular types of semiconductor sources (*e.g.*, Claims 2 and 14), particular functionality for increasing light intensity (*e.g.*, Claim 3), and capability to increase signal-to-noise ratio by increasing a pulse rate of a semiconductor source (*e.g.*, Claim 20).

58.     Thus, the asserted claims of the '304 Patent are directed to specific improvements to systems for non-invasive monitoring of physiological parameters and/or identification of associated objects. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '304 Patent.

**U.S. Patent No. 11,160,455**

59.     On November 2, 2021, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 11,160,455 entitled "Multi-Wavelength Wearable Device for Non-Invasive Blood Measurements in Tissue." The '455 Patent is attached as Exhibit 5.

60.     Plaintiff is the assignee of all rights, title, and interest in and to the '455 Patent and possesses all rights of recovery, whether legal or equitable, under the '455 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

61.     The '455 Patent is valid and enforceable.

62.     The '455 Patent is related through a chain of continuation applications to the '484 Patent and discloses and expands upon at least the same inventive solutions to technical challenges associated with non-invasive physiological parameters.

63.    The asserted claim of the '455 Patent comprises at least the following physical components: a light source comprising a driver and semiconductor light sources; one or more lenses configured to receive light from the light emitting diodes and to deliver a lens output light to tissue; a detection system comprising spaced detectors and an analog-to-digital converter and configured to receive lens output light reflected from the tissue and to generate an output signal indicative of one or more physiological parameters; and a smartphone or tablet configured to receive and process a portion of the output signal, and store and display the processed output signal (*e.g.*, Claim 1). Thus, the asserted claims of the '455 Patent are each directed to a physical system or device and are not directed to an abstract idea.

64.    The asserted claims of the '455 Patent further recite the capability of increasing the signal-to-noise ratio by increasing the light intensity of light sources, or by comparing a first signal generated responsive to light received while the semiconductor sources are off to a second signal generated responsive to light received while at least one of the semiconductor sources is on (*e.g.*, Claim 1). These elements provide for the unique and unconventional application of signal processing to generate and measure signals with a greater signal-to-noise ratio than the prior art, yielding more accurate and reliable non-invasive measurements of physiological parameters associated with a user.

65.    The asserted claims of the '455 Patent include additional elements that provide further beneficial enhancements, such as semiconductor light sources outputting light comprising three optical wavelengths (*e.g.*, Claims 1).

66.    Thus, the asserted claims of the '455 Patent are directed to specific improvements to systems for non-invasive monitoring of physiological parameters. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-

based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '455 Patent.

### U.S. Patent No. 12,193,790

67.     On January 14, 2025, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 12,193,790 entitled "Wearable Devices Comprising Semiconductor Diode Light Sources With Improved Signal-to-Noise Ratio." The '790 Patent is attached as Exhibit 6.

68.     Plaintiff is the assignee of all rights, title, and interest in and to the '790 Patent and possesses all rights of recovery, whether legal or equitable, under the '790 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

69.     The '790 Patent is valid and enforceable.

70.     The '790 Patent is related through a chain of continuation applications to the '533, '484, and '455 Patents and discloses and expands upon at least the same inventive solutions to technical challenges associated with devices and techniques used for non-invasive measurements of human physiological parameters.

71.     The asserted claims of the '790 Patent are directed to a wearable device comprising at least the following physical components: a light source comprising a plurality of semiconductor diodes; one or more lenses configured to receive light from the semiconductor diodes and to deliver a lens output light to tissue; and a detection system comprising particular hardware, including spaced detectors and an analog-to-digital converter, that is configured to receive lens output light reflected from the tissue and to generate an output signal indicative of at one or more measured physiological parameters (*e.g.*, Claim 7). Thus, the asserted claims of the '790 Patent are each directed to a tangible, physical device and is not directed to an abstract idea.

72.     The asserted claims of the '790 Patent further recite the capability of increasing the signal-to-noise ratio by increasing the light intensity of light sources and by comparing a first signal generated responsive to light received while the semiconductor diodes are off to a second signal generated responsive to light received while at least one of the semiconductor diodes is on, and the capability to at least in part identify an object using the optical hardware and spectroscopic functionalities of the claimed device (*e.g.*, Claim 7). These elements provide for unique and unconventional application of signal processing to generate and measure signals with a greater signal-to-noise ratio than the prior art, yielding more accurate and reliable non-invasive measurements of physiological parameters associated with a user.

73.     The asserted claims of the '790 Patent include additional elements that provide further beneficial enhancements, such as semiconductor diodes outputting light comprising near-infrared wavelength between 700 nanometers and 2500 nanometers.

74.     Thus, the asserted claims of the '790 Patent are directed to specific improvements to systems and devices used for non-invasive monitoring of physiological parameters. The asserted claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recites more than generic computer functionality and elements that were not purely conventional as of the priority date of the '790 Patent.

**Knowledge of the Asserted Patents**

75.     Defendant has actual notice of the Asserted Patents and the infringements alleged herein at least upon service of this Complaint.

76.     Defendant has had knowledge of at least the '868 Patent, and its infringement thereof, since about June 30, 2023 (if not earlier), on which date a complaint for infringement of

the '868 Patent was filed against Defendant in the United States District Court for the Western District of Texas (*Cheetah Omni, LLC v. Whoop, Inc.*, Case No. 6-23-cv-00478, herein the "W.D. Texas Action").

77.    Defendant has had knowledge of at least the '868 Patent prior to the filing of this Complaint by virtue of direct interactions with the prior assignee of the '868 Patent—Cheetah Omni, LLC—concerning the '868 Patent and the aforementioned W.D. Texas Action, including correspondence between counsel for Defendant and counsel for Cheetah Omni, LLC in September 2023.

78.    Defendant has been aware that the action commenced by Cheetah Omni, LLC was dismissed without any resolution of the infringement allegations raised under the '868 Patent in relation to Defendant's products.

79.    Upon information and belief, Defendant has had knowledge of Omni MedSci since about June 30, 2023 (if not earlier) at least based on Omni MedSci having been the applicant and assignee named on the '868 Patent.

80.    Upon information and belief, Defendant has had knowledge of Dr. Islam since June 30, 2023 (if not earlier) at least based on Dr. Islam having been the inventor named on the '868 Patent.

81.    Upon information and belief, Defendant has had knowledge since about June 30, 2023 (if not earlier) that Dr. Islam had invented, patented, and assigned to Omni MedSci, additional technology related to the technology of the '868 Patent, including technology for using light sources and other components in wearable measurement devices that are capable of detecting and monitoring physiological parameters for use in various applications, including the medical and healthcare fields.

82.     Upon information and belief, as a manufacturer and seller of wearable devices that are capable of detecting and monitoring physiological parameters for use in various applications, including the medical and healthcare fields, after being accused of infringing the '868 Patent, Defendant subsequently  monitored and  investigated other patents and published applications of Dr. Islam and/or Omni MedSci relevant to Defendant's products and thereby gained knowledge of the Asserted Patents.

83.     Upon information and belief, after having been sued for infringing the '868 patent, Defendant has subsequently monitored and investigated other litigations involving patents invented by Dr. Islam and owned by entities controlled by Dr. Islam such as Omni MedSci.

84.     On December 20, 2024, Plaintiff filed a litigation in the Eastern District of Texas, Case No. 2:24-cv-01070 ("the E.D. Texas Action"), involving the '868 Patent along with the remaining Asserted Patents and in which Plaintiff alleges that wearable devices of certain of Defendant's competitors infringe the Asserted Patents based on features similar to features included in Defendant's wearable device products.

85.     Upon information and belief, the W.D. Texas Action and E.D. Texas Action also provided Defendant with actual or constructive pre-suit notice of the Asserted Patents.

**THE ACCUSED SYSTEMS**

86.     Defendant makes, uses, sells, offers for sale, and/or imports into the United States a variety of smart wearable devices. These smart wearable devices include at least WHOOP 1.0, WHOOP 2.0, WHOOP 3.0, and WHOOP 4.0 wearable devices (each an "Accused Wearable Device"). The Accused Wearable Devices include capabilities for measuring one or more physiological parameters of the user, such as heart rate, heart rate variability, respiratory rate, blood oxygen, stress and strain, and sleep quality, and they are designed and intended for use with

smartphones and/or tablet computers. Whoop actively markets and supports sales of the Accused Wearable Devices through its website and other means, and sells the Accused Wearable Devices to retailers, distributors, and/or other resellers.

87.    Whoop also provides software applications, such as the Whoop App, that are configured to integrate the Accused Wearable Devices for use with smartphones and tablets.

88.    When the user wears an Accused Wearable Device on their wrist, the device measures physiological parameters using various hardware components. The Accused Wearable Devices are configured to transfer information related to these parameters to a smartphone or tablet running a compatible mobile app and capable of transferring associated information to a cloud computing platform. Thus, Whoop provides and supports multiple hardware and software components designed and intended to be integrated into a complete system for measuring, processing, storing, and displaying one or more physiological parameters of a user of an Accused Wearable Device.

## COUNT I
## (Infringement of the '868 Patent)

89.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 88 above.

90.    Whoop, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has directly infringed the '868 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by at least making and using diagnostic systems that embody the inventions claimed in the '868 Patent, in particular, at least Claims 7 and 9, within the United States. Whoop has been engaged in one or more of these direct infringing activities related to its Accused Wearable Devices. Whoop sells the Accused Wearable Devices through its website and to distributors, retailers, and/or other customers throughout the United States, and actively markets

and supports sales. The Accused Wearable Devices are designed to connect to, and work in concert with, smartphones and/or tablets via the Whoop App provided and/or supported by Whoop, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform serviced on behalf of and/or at the direction of Whoop. Whoop has marketed and promoted the compatibility between the Accused Wearable Devices and popular smartphones and tablets for providing an integrated diagnostic system, and users need only perform simple steps to connect an Accused Wearable Device with a smartphone or tablet enabled with a Whoop mobile app and supported by a cloud. On information and belief, Plaintiff alleges that Whoop employees, such as product development and testing engineers and/or sales and marketing personnel, have directly infringed at least Claims 7 and 9 of the '868 Patent in connection with development, testing, and/or demonstration of diagnostic systems comprising Accused Wearable Devices.

91.     Notice of the factual bases of Plaintiff's allegations of infringement of the '868 Patent by the Accused Wearable Devices is provided in the exemplary claim chart attached as Exhibit 7.  Exhibit 7 demonstrates how the '868 Patent is infringed by reference to particular Accused Wearable Devices, popular smartphone and tablet products, and a Whoop-supported cloud, which, on information and belief, are representative of the infringing aspects of at least the Accused Wearable Devices identified in Paragraphs 86–88 above. The attached infringement chart is based on Plaintiff's current understanding of the Accused Wearable Devices based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 7 is exemplary and should not be considered limiting of Whoop's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

92.     Whoop's infringement of the '868 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

## COUNT II
## (Infringement of the '533 Patent)

93.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 92 above.

94.     Whoop, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '533 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by at least making and using measurement systems that embody the inventions claimed in the '533 Patent, in particular, at least Claims 11 and 12, within the United States. Whoop has been and is engaged in one or more of these direct infringing activities related to its Accused Wearable Devices. Whoop sells the Accused Wearable Devices through its website and to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Accused Wearable Devices are designed to connect to and work in concert with a smartphone or tablet through related mobile apps provided and/or supported by Whoop, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform serviced on behalf of and/or at the direction of Whoop. Whoop has and continues to market and promote the compatibility between the Accused Wearable Devices and popular smartphones and tablets for providing an integrated measurement system, and users need only perform simple steps to connect an Accused Wearable Device with a smartphone or tablet enabled with a Whoop mobile app and supported by a cloud. On information and belief, Plaintiff alleges that Whoop employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue to

directly infringe at least Claims 11 and 12 of the '533 Patent in connection with development, testing, and/or demonstration of measurement systems comprising Accused Wearable Devices.

95.    Notice of the factual bases of Plaintiff's allegations of infringement of the '533 Patent by the Accused Wearable Devices is provided in the exemplary claim chart attached as Exhibit 8.  Exhibit 8 demonstrates how the '533 Patent is infringed by reference to particular Accused Wearable Devices, popular smartphone and tablet products, and a Whoop-supported cloud, which, on information and belief, are representative of the infringing aspects of at least the Accused Wearable Devices identified in Paragraphs 86–88 above. The attached infringement chart is based on Plaintiff's current understanding of the Accused Wearable Devices based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 8 is exemplary and should not be considered limiting of Whoop's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

96.    Whoop, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, was and is infringing the '533 Patent, including at least Claims 11 and 12, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States both prior to the filing of this lawsuit and after.

97.    Whoop's customers and other end users directly infringe at least by making and using infringing measurement systems comprised of Accused Wearable Devices integrated as intended with a smartphone or tablet running a health mobile app provided and/or supported by Whoop. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the

subject matter recited in Claims 11 and 12, including, for example, by connecting and/or synching the components and installing software applications on any one or more of the components, as necessary. End users have used and continue to use the subject matter of asserted system Claims 11 and 12 by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End users initiate use of the system by placing an Accused Wearable Device on their wrist and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform.

98.     Upon information and belief, Whoop has had prior actual notice of the '533 Patent through its monitoring of patents invented by Dr. Islam and/or its awareness and investigation of the E.D. Texas Action filed on December 20, 2024.

99.     Whoop has actual notice of the '533 Patent and the infringement alleged herein at least upon the service of this Complaint.

100.     The timing, circumstances, and extent of Whoop obtaining actual knowledge of the '533 Patent prior to commencement of this lawsuit, and after, will be confirmed during discovery.

101.     Whoop actively induces third parties, including customers and end users, to make and use infringing measurement systems incorporating Accused Wearable Devices operating in their normal and customary way and in accordance with their intended functionality and purpose. Whoop induces such acts of direct infringement through its affirmative acts of manufacturing,

selling, distributing, and/or otherwise making available the Accused Wearable Devices, and providing instructions, documentation, and other information to customers and end users suggesting they use the Accused Wearable Devices in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, Whoop induces direct infringement by such third parties by (i) selling the Accused Wearable Devices to third parties and providing software designed to integrate such products with smartphones or tablets running a health mobile app provided and/or supported by Whoop, when such products are designed for use as a measurement system that infringes the '533 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '533 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Accused Wearable Devices are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by Whoop; (iv) providing access to a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Accused Wearable Devices in their customary way; (vi) advertising and promoting the Accused Wearable Devices; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Accused Wearable Devices including the physiological measurement features thereof.

102.    Upon gaining knowledge of the '533 Patent, it became apparent to Whoop that the manufacture, sale, importing, offer for sale, or use of the Accused Wearable Devices infringe the '533 Patent. Despite pre- and post-suit knowledge of the '533 Patent, Whoop continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make

infringing systems and to use its products in a manner which infringes the '533 Patent. Whoop performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '533 Patent. Whoop directly benefits from and actively and knowingly encourages customers and end users to make and use infringing measurement systems incorporating the Accused Wearable Devices. On information and belief, Whoop will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '533 Patent.

103.    Whoop, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Accused Wearable Devices and software designed and intended to integrate such devices with smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least Claims 11 and 12 of the '533 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

104.    Whoop's direct and indirect infringement of the '533 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Whoop ceases its infringing activities, it will continue to injure Plaintiff.

105.    On information and belief, Whoop acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Whoop should have known about it. Whoop continues to infringe the

'533 Patent by making, using, selling, offering for sale and/or importing in the United States the Accused Wearable Devices and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Whoop continues its infringement notwithstanding actual knowledge of the '533 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '533 Patent. Whoop's infringement of the '533 Patent, following its knowledge of the '533 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## COUNT III
### (Infringement of the '484 Patent)

106.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 105 above.

107.    Whoop, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '484 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by at least making and using measurement systems that embody the inventions claimed in the '484 Patent, in particular, at least Claims 3, 8, 9, and 10, within the United States. Whoop has been and is engaged in one or more of these direct infringing activities related to its Accused Wearable Devices. Whoop sells the Accused Wearable Devices through its website and to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Accused Wearable Devices are designed to connect to and work in concert with a smartphone or tablet through related mobile apps provided and/or supported by Whoop, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform serviced on behalf of and/or

at the direction of Whoop. Whoop has and continues to market and promote the compatibility between the Accused Wearable Devices and popular smartphones and tablets for providing an integrated measurement system, and users need only perform simple steps to connect an Accused Wearable Device with a smartphone or tablet enabled with a Whoop mobile app and supported by a cloud. On information and belief, Plaintiff alleges that Whoop employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue to directly infringe at least Claims 3, 8, 9, and 10 of the '484 Patent in connection with development, testing, and/or demonstration of measurement systems comprising Accused Wearable Devices.

108.    Notice of the factual bases of Plaintiff's allegations of infringement of the '484 Patent by the Accused Wearable Devices is provided in the exemplary claim chart attached as Exhibit 9.  Exhibit 9 demonstrates how the '484 Patent is infringed by reference to particular Accused Wearable Devices, popular smartphone and tablet products, and a Whoop-supported cloud, which, on information and belief, are representative of the infringing aspects of at least the Accused Wearable Devices identified in Paragraphs 86–88 above. The attached infringement chart is based on Plaintiff's current understanding of the Accused Wearable Devices based on information publicly available at the time of filing this Complaint. The selection of claims and products in Exhibit 9 is exemplary and should not be considered limiting of Whoop's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

109.    Whoop, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, was and is infringing the '484 Patent, including at least Claims 3, 8, 9, and 10, pursuant

to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States both prior to the filing of this lawsuit and after.

110. Whoop's customers and other end-users directly infringe at least by making and using infringing measurement systems comprised of Accused Wearable Devices integrated as intended with a smartphone or tablet running a health mobile app provided and/or supported by Whoop. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in Claims 3, 8, 9, and 10, including, for example, by connecting and/or synching the components and installing software applications on any one or more of the components, as necessary. End users have used and continue to use the subject matter of at least Claims 3, 8, 9, and 10 by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End users initiate use of the system by placing an Accused Wearable Device on their wrist and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor, and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform.

111. Upon information and belief, Whoop has had prior actual notice of the '484 Patent through its monitoring of patents invented by Dr. Islam and/or its awareness an investigation of the E.D. Texas Action filed on December 20, 2024.

112.    Whoop has actual notice of the '484 Patent and the infringement alleged herein at least upon the service of this Complaint.

113.    The timing, circumstances, and extent of Whoop obtaining actual knowledge of the '484 Patent prior to commencement of this lawsuit, and after, will be confirmed during discovery.

114.    Whoop actively induces third parties, including customers and end users, to make and use infringing measurement systems incorporating Accused Wearable Devices operating in their normal and customary way and in accordance with their intended functionality and purpose. Whoop induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Wearable Devices, and providing instructions, documentation, and other information to customers and end users suggesting they use the Accused Wearable Devices in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Whoop induces direct infringement by such third parties by (i) selling the Accused Wearable Devices to third parties and providing software designed to integrate such products with smartphones or tablets running a health mobile app provided and/or supported by Whoop, when such products are designed for use as a measurement system that infringes the '484 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '484 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Accused Wearable Devices are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by Whoop; (iv) providing access to a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and

instructions for assembling and operating the Accused Wearable Devices in their customary way; (vi) advertising and promoting the Accused Wearable Devices; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Accused Wearable Devices including the physiological measurement features thereof.

115.    Upon gaining knowledge of the '484 Patent, it became apparent to Whoop that the manufacture, sale, importing, offer for sale, or use of the Accused Wearable Devices infringe the '484 Patent. Despite pre- and post-suit knowledge of the '484 Patent, Whoop continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '484 Patent. Whoop performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '484 Patent. Whoop directly benefits from and actively and knowingly encourages customers and end users to make and use infringing measurement systems incorporating the Accused Wearable Devices. On information and belief, Whoop will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '484 Patent.

116.    Whoop, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Accused Wearable Devices and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least Claims 3, 8, 9, and 10 of the '484 Patent,

are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

117.    Whoop's direct and indirect infringement of the '484 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Whoop ceases its infringing activities, it will continue to injure Plaintiff.

118.    On information and belief, Whoop acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Whoop should have known about it. Whoop continues to infringe the '484 Patent by making, using, selling, offering for sale and/or importing in the United States the Accused Wearable Devices and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Whoop continues its infringement notwithstanding actual knowledge of the '484 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '484 Patent. Whoop's infringement of the '484 Patent, following its knowledge of the '484 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

**COUNT IV**
**(Infringement of the '304 Patent)**

119.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 118 above.

120.    Whoop, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '304 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by at least making and using

measurement systems that embody the inventions claimed in the '304 Patent, in particular, at least Claims 1–3, 11, and 14, within the United States. Whoop has been and is engaged in one or more of these direct infringing activities related to its Accused Wearable Devices. Whoop sells the Accused Wearable Devices through its website and to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Accused Wearable Devices are designed to connect to and work in concert with a smartphone or tablet through related mobile apps provided and/or supported by Whoop, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform serviced on behalf of and/or at the direction of Whoop. Whoop has and continues to market and promote the compatibility between the Accused Wearable Devices and popular smartphones and tablets for providing an integrated measurement system, and users need only perform simple steps to connect an Accused Wearable Device with a smartphone or tablet enabled with a Whoop mobile app and supported by a cloud. On information and belief, Plaintiff alleges that Whoop employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue to directly infringe at least Claims 1–3, 11, and 14 of the '304 Patent in connection with development, testing, and/or demonstration of measurement systems comprising Accused Wearable Devices.

121.    Whoop, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has also in the past and continues to directly infringe at least Claims 19 and 20 of the '304 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing the Accused Wearable Devices within the United States and within this District.

122.    Notice of the factual bases of Plaintiff's allegations of infringement of the '304 Patent by the Accused Wearable Devices is provided in the exemplary claim chart attached as

Exhibit 10.  Exhibit 10 demonstrates how the '304 Patent is infringed by reference to particular Accused Wearable Devices, popular smartphone and tablet products, and a Whoop-supported cloud, which, on information and belief, are representative of the infringing aspects of at least the Accused Wearable Devices identified in Paragraphs 86–88 above. The attached infringement chart is based on Plaintiff's current understanding of the Accused Wearable Devices based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 10 is exemplary and should not be considered limiting of Whoop's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

123.    Whoop, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, was and is infringing the '304 Patent, including at least Claims 1, 2, 3, 11, 14, 19, and 20, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States both prior to the filing of this lawsuit and after.

124.    Whoop's customers and other end users directly infringe at least Claims 1, 2, 3, 11, and 14 by at least making and using infringing measurement systems comprised of Accused Wearable Devices integrated with a smartphone or tablet running a health mobile app provided and/or supported by Whoop. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in Claims 1, 2, 3, 11, and 14 including, for example, by connecting and/or synching the components and installing software applications on any one or more of the components, as necessary. End users have used and continue to use the subject matter

of at least Claims 1, 2, 3, 11, and 14 by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End users initiate use of the system by placing an Accused Wearable Device on their wrist and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform. Whoop's customers and other end users also directly infringe at least Claims 19 and 20 by using Accused Wearable Devices, and distributors and resellers directly infringe those claims by offering for sale and selling the Accused Wearable Devices.

125.    Upon information and belief, Whoop has had prior actual notice of the '304 Patent through it monitoring of patents invented by Dr. Islam and/or its awareness and investigation of the E.D. Texas Action filed on December 20, 2024.

126.    Whoop has actual notice of the '304 Patent and the infringement alleged herein at least upon the service of this Complaint.

127.    The timing, circumstances, and extent of Whoop obtaining actual knowledge of the '304 Patent prior to commencement of this lawsuit, and after, will be confirmed during discovery.

128.    Whoop actively induces third parties, including customers and end users, to make and use the infringing Accused Wearable Devices and infringing measurement systems incorporating Accused Wearable Devices operating in their normal and customary way and in accordance with their intended functionality and purpose. Whoop induces such acts of direct

infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Wearable Devices, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Accused Wearable Devices in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, Whoop induces direct infringement by such third parties by (i) selling the Accused Wearable Devices to third parties and providing software designed to integrate such products with smartphones or tablets running a health mobile app provided and/or supported by Whoop, when such products are designed for use as a measurement system that infringes the '304 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '304 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Accused Wearable Devices are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by Whoop; (iv) providing access to a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Accused Wearable Devices in their customary way; (vi) advertising and promoting the Accused Wearable Devices; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Accused Wearable Devices including the physiological measurement features thereof.

129.    Upon gaining knowledge of the '304 Patent, it became apparent to Whoop that the manufacture, sale, importing, offer for sale, or use of the Accused Wearable Devices infringe the '304 Patent. Despite pre- and post-suit knowledge of the '304 Patent, Whoop continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make

infringing systems and to use its products in a manner which infringes the '304 Patent. Whoop performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '304 Patent. Whoop directly benefits from and actively and knowingly encourages customers and end users to make and use infringing measurement systems incorporating the Accused Wearable Devices. On information and belief, Whoop will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '304 Patent.

130.    Whoop, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Accused Wearable Devices and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least Claims 1, 2, 3, 11, and 14 of the '304 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

131.    Whoop's direct and indirect infringement of the '304 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Whoop ceases its infringing activities, it will continue to injure Plaintiff.

132.    On information and belief, Whoop acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Whoop should have known about it. Whoop continues to infringe the

'304 Patent by making, using, selling, offering for sale and/or importing in the United States the Accused Wearable Devices and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Whoop continues its infringement notwithstanding actual knowledge of the '304 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '304 Patent. Whoop's infringement of the '304 Patent, following its knowledge of the '304 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## COUNT V
### (Infringement of the '455 Patent)

133.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 132 above.

134.    Whoop, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '455 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by at least making and using measurement systems that embody the inventions claimed in the '455 Patent, in particular, at least Claim 1, within the United States. Whoop has been and is engaged in one or more of these direct infringing activities related to its Accused Wearable Devices. Whoop sells the Accused Wearable Devices through its website and to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Accused Wearable Devices are designed to connect to and operate with a smartphone or tablet through related mobile apps provided and/or supported by Whoop, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform serviced on behalf of and/or at the

direction of Whoop. Whoop has and continues to market and promote the compatibility between the Accused Wearable Devices and popular smartphones and tablets for providing an integrated measurement system, and users need only perform simple steps to connect an Accused Wearable Device with a smartphone or tablet enabled with a Whoop mobile app and supported by a cloud. On information and belief, Plaintiff alleges that Whoop employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue to directly infringe at least Claim 1 of the '455 Patent in connection with development, testing, and/or demonstration of measurement systems comprising Accused Wearable Devices.

135.    Notice of the factual bases of Plaintiff's allegations of infringement of the '455 Patent by the Accused Wearable Devices is provided in the exemplary claim chart attached as Exhibit 11.  Exhibit 11 demonstrates how the '455 Patent is infringed by reference to particular Accused Wearable Devices, popular smartphone and tablet products, and a Whoop-supported cloud, which, on information and belief, are representative of the infringing aspects of at least the Accused Wearable Devices identified in Paragraphs 86–88 above. The attached infringement chart is based on Plaintiff's current understanding of the Accused Wearable Devices based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 11 is exemplary and should not be considered limiting of Whoop's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

136.    Whoop, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, was and is infringing the '455 Patent, including at least Claim 1pursuant to 35 U.S.C. §

271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States both prior to the filing of this lawsuit and after.

137.    Whoop's customers and other end users directly infringe at least by making and using infringing measurement systems comprised of Accused Wearable Devices integrated as intended with a smartphone or tablet running a health mobile app provided and/or supported by Whoop. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in Claim 1, including, for example, by connecting and/or synching the components and installing software applications on any one or more of the components, as necessary. End users have used and continue to use the subject matter of at least Claim 1 by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End users initiate use of the system by placing an Accused Wearable Device on their wrist and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform.

138.    Upon information and belief, Whoop has had prior actual notice of the '455 Patent through it monitoring of patents invented by Dr. Islam and/or its awareness and investigation of the E.D. Texas Action filed on December 20, 2024.

139.    Whoop has actual notice of the '455 Patent and the infringement alleged herein at least upon the service of this Complaint.

140.    The timing, circumstances, and extent of Whoop obtaining actual knowledge of the '455 Patent prior to commencement of this lawsuit, and after, will be confirmed during discovery.

141.    Whoop actively induces third parties, including customers and end users, to make and use infringing measurement systems incorporating Accused Wearable Devices operating in their normal and customary way and in accordance with their intended functionality and purpose. Whoop induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Wearable Devices, and providing instructions, documentation, and other information to customers and end users suggesting they use the Accused Wearable Devices in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Whoop induces direct infringement by such third parties by (i) selling the Accused Wearable Devices to third parties and providing software designed to integrate such products with smartphones or tablets running a health mobile app provided and/or supported by Whoop, when such products are designed for use as a measurement system that infringes the '455 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '455 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Accused Wearable Devices are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by Whoop; (iv) providing access to a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Accused Wearable Devices in their customary way; (vi) advertising and promoting the Accused Wearable Devices; and/or (vii) updating, enhancing,

and providing ongoing support and maintenance for the Accused Wearable Devices including the physiological measurement features thereof.

142.     Upon gaining knowledge of the '455 Patent, it became apparent to Whoop that the manufacture, sale, importing, offer for sale, or use of the Accused Wearable Devices infringe the '455 Patent. Despite pre- and post-suit knowledge of the '455 Patent, Whoop continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '455 Patent. Whoop performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '455 Patent. Whoop directly benefits from and actively and knowingly encourages customers and end users to make and use infringing measurement systems incorporating the Accused Wearable Devices. On information and belief, Whoop will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '455 Patent.

143.     Whoop, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Accused Wearable Devices and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least Claim 1 of the '455 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

144.    Whoop's direct and indirect infringement of the '455 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Whoop ceases its infringing activities, it will continue to injure Plaintiff.

145.    On information and belief, Whoop acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Whoop should have known about it. Whoop continues to infringe the '455 Patent by making, using, selling, offering for sale and/or importing in the United States the Accused Wearable Devices and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Whoop continues its infringement notwithstanding actual knowledge of the '455 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '455 Patent. Whoop's infringement of the '455 Patent, following its knowledge of the '455 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

### COUNT VI
### (Infringement of the '790 Patent)

146.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 145 above.

147.    Whoop, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '790 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by at least making and using optical systems comprising the Accused Wearable Devices that embody the inventions claimed in the '790 Patent, in particular, at least Claim 7, within the United States. Whoop has been and is engaged in

one or more of these direct infringing activities related to its Accused Wearable Devices. Whoop makes the Accused Wearable Device and then offers to sell and sells the Accused Wearable Devices through its website and to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Accused Wearable Devices are designed to connect to and operate with a smartphone or tablet through related mobile apps provided and/or supported by Whoop. Whoop has and continues to market and promote the compatibility between the Accused Wearable Devices and popular smartphones and tablets for providing an integrated optical system, and users need only perform simple steps to connect an Accused Wearable Device with a smartphone or tablet enabled with a Whoop mobile app. On information and belief, Plaintiff alleges that Whoop employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least Claim 7 of the '790 Patent in connection with development, testing, and/or demonstration of optical systems comprising Accused Wearable Devices.

148.    Whoop, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has also in the past and continues to directly infringe at least Claim 7 of the '790 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing the Accused Wearable Devices within the United States and within this District.

149.    Notice of the factual bases of Plaintiff's allegations of infringement of the '790 Patent by the Accused Wearable Devices is provided in the exemplary claim chart attached as Exhibit 12. Exhibit 12 demonstrates how the '790 Patent is infringed by reference to particular Accused Wearable Devices, popular smartphone and tablet products, , which, on information and belief, are representative of the infringing aspects of at least the Accused Wearable Devices

identified in Paragraphs 86–88 above. The attached infringement chart is based on Plaintiff's current understanding of the Accused Wearable Devices based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 12 is exemplary and should not be considered limiting of Whoop's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

150.    Whoop, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, was and is infringing the '790 Patent, including at least Claim 7 pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States both prior to the filing of this lawsuit and after.

151.    Whoop's customers and other end users directly infringe at least by using infringing optical systems comprised of Accused Wearable Devices, including use integrated with and connected to a smartphone or tablet running a health mobile app provided and/or supported by Whoop. End users have used and continue to use the subject matter of at least Claim 7 by placing the optical systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. The end user benefits from each component of the claimed system, which allows the user to measure, monitor, and track health information derived from non-invasive physiological measurements.

152.    Upon information and belief, Whoop has had prior actual notice of the '790 Patent through its monitoring of patent invented by Dr. Islan and/or its awareness and investigation of the E.D. Texas Action filed on December 20, 2024.

153.    Whoop has actual notice of the '790 Patent and the infringement alleged herein at least upon the service of this Complaint.

154.    The timing, circumstances, and extent of Whoop obtaining actual knowledge of the '790 Patent prior to commencement of this lawsuit, and after, will be confirmed during discovery.

155.    Whoop actively induces third parties, including customers and end users, to use infringing optical systems incorporating Accused Wearable Devices operating in their normal and customary way and in accordance with their intended functionality and purpose. Whoop induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Wearable Devices, and providing instructions, documentation, and other information to customers and end users suggesting they use the Accused Wearable Devices in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Whoop induces direct infringement by such third parties by (i) selling the Accused Wearable Devices to third parties and providing software designed to integrate such products with smartphones or tablets running a health mobile app provided and/or supported by Whoop, when such products are designed for use as an optical system that infringes the '790 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '790 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Accused Wearable Devices are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by Whoop; (iv) providing access to a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the

Accused Wearable Devices in their customary way; (vi) advertising and promoting the Accused Wearable Devices; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Accused Wearable Devices including the physiological measurement features thereof.

156.    Upon gaining knowledge of the '790 Patent, it became apparent to Whoop that the manufacture, sale, importing, offer for sale, or use of the Accused Wearable Devices infringe the '790 Patent. Despite pre- and post-suit knowledge of the '790 Patent, Whoop continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner which infringes the '790 Patent. Whoop performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '790 Patent. Whoop directly benefits from and actively and knowingly encourages customers and end users to use infringing optical systems incorporating the Accused Wearable Devices. On information and belief, Whoop will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '790 Patent.

157.    Whoop's direct and indirect infringement of the '790 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Whoop ceases its infringing activities, it will continue to injure Plaintiff.

158.    On information and belief, Whoop acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Whoop should have known about it. Whoop continues to infringe the '790 Patent by making, using, selling, offering for sale and/or importing in the United States the Accused Wearable Devices and by inducing the direct infringing use of the claimed inventions by

others, in reckless disregard of Plaintiff's patent rights. Whoop continues its infringement notwithstanding actual knowledge of the '790 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '790 Patent. Whoop's infringement of the '790 Patent, following its knowledge of the '790 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## JURY DEMANDED

159.    In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues triable.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court enter judgment in its favor and against Defendant as follows:

i.    finding that Defendant have directly and/or indirectly infringed or are directly and/or indirectly infringing one or more claims of each of the Asserted Patents;

ii.    awarding Plaintiff damages in accordance with 35 U.S.C. § 284, or as otherwise permitted by law, including treble damages based on Defendant's willful infringement, and damages for any continued post-verdict infringement;

iii.    awarding Plaintiff pre-judgment and post-judgment interest on the damages award and costs;

iv.    declaring this case exceptional and awarding Plaintiff its reasonable attorney fees in accordance with 35 U.S.C. § 285, or as otherwise permitted by law;

v.    a permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in

concert or privity with any of them from infringing or inducing or contributing to the infringement of the Asserted Patents without additional compensation to Plaintiff in an amount to be determined by the Court; and

     vi.     awarding all such other costs and further relief the Court determines to be just and equitable.

Dated: February 3, 2025

OF COUNSEL:

Daniel S. Stringfield (*pro hac vice* forthcoming)
Illinois Bar No. 6293893
dstringfield@nixonpeabody.com
Timothy P. Maloney (*pro hac vice* forthcoming)
Illinois Bar No. 6216483
tmaloney@nixonpeabody.com
Dragan Gjorgiev (*pro hac vice* forthcoming)
Illinois Bar No. 6326950
Texas Bar No. 24136166
Peter Krusiewicz (*pro hac vice* forthcoming)
Illinois Bar No. 6342444
**NIXON PEABODY LLP**
70 West Madison
Suite 5200
Chicago, IL 60602
Tel: (312) 977-4400
Fax:  (312) 977-4405

Corey T. Leggett (*pro hac vice* forthcoming)
California Bar No. 342972
cleggett@nixonpeabody.com
**NIXON PEABODY LLP**
1 Embarcadero Center
32nd Floor
San Francisco, CA 94111
Tel: (415) 984-8200
Fax:  (415) 984-8300

Elizabeth M. Chiaviello (*pro hac vice* forthcoming)
Texas Bar No. 24088913*
echiaviello@nixonpeabody.com
**NIXON PEABODY LLP**
799 9th Street NW
Suite 500
Washington, D.C. 20001
Tel: (202) 585-8000
Fax:  (202) 585-8080

BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (No. 4952)
Ronald P. Golden, III (No. 6254)
Emily L. Skaug (No. 6921)
600 N. King Street, Suite 400
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com
eskaug@bayardlaw.com

*Attorneys for Plaintiff Omni MedSci, Inc.*

*   Admitted to practice only in Texas; supervised by a member of the firm who is admitted to the D.C. Bar.