# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OMNI MEDSCI, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 25-140 |
| | § | |
| WHOOP, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is a renewed motion to stay filed by Defendant WHOOP, Inc.  D.I. 78.

The motion seeks to stay proceedings in this case pending *inter partes* review ("IPR") proceedings

in  IPR2025-01250,  IPR2025-01252,  IPR2025-01253,  and  IPR2025-01254,  and  an  *ex  parte*

reexamination  ("EPR")  of  U.S.  Patent  No.  9,055,868  by  the  Patent  Trial  and  Appeal  Board

("PTAB").  After WHOOP filed its motion, the PTAB instituted post-grant review ("PGR") of

U.S. Patent No. 12,193,790.  *See*  D.I. 98.  WHOOP's motion is conditionally granted.

## BACKGROUND

Plaintiff Omni MedSci, Inc., filed this patent infringement lawsuit alleging that defendant

WHOOP, Inc., ("WHOOP") infringes United States Patent Nos. 9,055,868 ("the '868 patent");

9,651,533 ("the '533 patent"); 10,517,484 ("the '484 patent"); 10,874,304 ("the '304 patent");

11,160,455 ("the '455 patent"); and 12,193,790 ("the '790 patent").  In its first amended complaint,

Omni further alleged infringement of U.S. Patent No. 12,268,475 ("the '475 patent").  D.I. 11.

Omni later dismissed its claims related to the '484 patent.  D.I. 14, 20.  WHOOP filed a motion to

dismiss Omni's first amended complaint, which I granted in part and denied in part.  D.I. 33.

WHOOP previously filed a motion to stay this action pending IPR and PGR proceedings regarding the patents-in-suit.  D.I. 36.[1]  I denied that motion in large part because the Patent and Trademark Office ("PTO") had not yet issued decisions granting or denying those petitions.  D.I. 61.  The PTO has now instituted IPR, EPR, or PGR proceedings with respect to all the asserted claims in each of the asserted patents.  In light of those actions, WHOOP has renewed its request for a stay in the instant motion.  I have temporarily stayed all proceedings in this case pending the resolution of WHOOP's renewed motion.  D.I. 95.

The six asserted patents contain a total of 125 claims.  Omni currently asserts 15 of those 125 claims: claims 7 and 9 of the '868 patent; claims 11 and 12 of the '533 patent; claims 12, 13, and 26 of the '304 patent; claim 1 of the '455 patent; claim 7 of the '790 patent; and claims 1, 5, 8, and 11–13 of the '475 patent.  D.I. 79 at vi (summarizing the asserted claims).

Omni previously filed suit against Apple and Samsung, alleging infringement of one or more of the same patents that are asserted in this case.  *See Omni MedSci, Inc. v. Apple Inc.*, No. 4:19-cv-05924 (N.D. Cal.); *Omni MedSci, Inc. v. Apple Inc.*, No. 4:20-cv-00563 (N.D. Cal.); *Omni MedSci, Inc. v. Samsung Elecs. Co.*, No. 2:24-cv-01070 (E.D. Tex.).

In response, Apple and Samsung both challenged Omni's patents before the PTO.  Apple filed an IPR petition challenging claims 5, 7, 10, 13, and 15–17 of the '533 patent, which the PTAB granted.  Ultimately, the PTAB found all challenged claims to be unpatentable, and the Federal Circuit affirmed that determination.  *Omni MedSci, Inc. v. Apple Inc.*, No. 21-1229, 2022 WL 2062168 (Fed. Cir. June 8, 2022).  While that IPR invalidated the challenged claims of the '533

---

[1] The EPR petition that WHOOP relies on in its present motion had not been filed at the time of WHOOP's first motion to stay.

patent, it did not address claims 11 or 12 of the '533 patent, the only two claims of that patent that are asserted in this case.[2]

Samsung filed IPR, EPR, and PGR petitions challenging various claims of the '533, '304, '455, '790, '475, and '868 patents—the same patents that are asserted against WHOOP in this case.  Samsung's challenges, most of which are still pending, are addressed to all the asserted claims that are at issue in this case.  The current status of Samsung's challenges is summarized in the tables below:

| Samsung IPRs | | | | |
|---|---|---|---|---|
| **Challenged Patent** | **IPR Number** | **Challenged Claims** | **Status** | **Reference** |
| '868 Patent | IPR2025-01249 | 7-11, 13-14 | Petition Denied (Discretionary) | D.I. 39-1 at Exh. 16 (petition); D.I. 56-1 at Exh. A (discretionary denial) |
| '533 Patent | IPR2025-01250 | 6, 11-12, 14, 18 | Petition Granted | D.I. 38-1 at Exh. 9 (petition); D.I. 80-1 at Exh. 22 (petition grant) |
| '304 Patent | IPR2025-01251 | 1-6, 11-16, 19-22, 26-27 | Petition Granted | D.I. 38-1 at Exh. 10 (petition); D.I. 80-1 at Exh. 22 (petition grant) |
| '455 Patent | IPR2025-01252 | 1-20 | Petition Granted | D.I. 39-1 at Exh. 11 (petition); D.I. 80-1 at Exh. 22 (petition grant) |
| '790 Patent | IPR2025-01253 | 7 | Petition Granted | D.I. 39-1 at Exh. 12 (petition); D.I. 80-1 at Exh. 22 (petition grant) |
| '475 Patent | IPR2025-01254 | 1, 5-8, 11-13 | Petition Granted | D.I. 39-1 at Exh. 14 (petition); D.I. 80-1 at Exh. 22 (petition grant) |

---

[2] Claims 11 and 12 are dependent claims that depend from independent claim 5, which was invalidated by the PTAB in Apple's IPR.

| Samsung PGRs | | | | |
|---|---|---|---|---|
| **Challenged Patent** | **PGR Number** | **Challenged Claims** | **Status** | **Reference** |
| '790 Patent | PGR2025-00064 | 7 | Petition Denied (Discretionary) | D.I. 39-1 at Exh. 13 (petition); D.I. 56-1 at Exh. A (discretionary denial) |
| '475 Patent | PGR2025-00063 | 1, 5-8, 11-13 | Petition Denied (Discretionary) | D.I. 39-1 at Exh. 15 (petition); D.I. 56-1 at Exh. A (discretionary denial) |

| Samsung EPRs | | | | |
|---|---|---|---|---|
| **Challenged Patent** | **EPR Number** | **Challenged Claims** | **Status** | **Reference** |
| '868 Patent | 90/015/821 | 7-9 | Request Granted | D.I. 80-1 at Exh. 23 (request granted) |

WHOOP also filed its own IPR petitions and one PGR petition against several, but not all, of the asserted patents. D.I. 38-1 at Exhs. 1–4 (IPR petitions challenging the '533, '304, and '455 patents and a PGR petition challenging the '790 patent). WHOOP's PGR petition challenging claim 7 of the '790 patent was granted, but WHOOP's three IPR petitions were discretionally denied. *See* D.I. 80-1 at Exh. 30; D.I. 98.

Following the PTAB's institution of Samsung's IPRs and its EPR, WHOOP filed this renewed motion for a stay. D.I. 78, 79. Omni filed a response in opposition, D.I. 88, and WHOOP filed a reply, D.I. 97. Shortly after the briefing was completed, the PTAB granted institution of WHOOP's PGR petition challenging the '790 patent. D.I. 98. All the petitions filed by either Samsung or WHOOP challenging the asserted patents have now been acted on, and the proceedings on the issues before the PTAB are in progress. *Id.*

4

## DISCUSSION

The question whether to stay proceedings pending PTO review of the validity of a patent at issue in a lawsuit is a matter committed to the district court's discretion. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (request for a stay pending reexamination). A stay is particularly justified when "the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058, 2015 WL 1069111, at *1 (E.D. Tex. Mar. 11, 2015).

When determining whether to grant a stay pending PTAB review of a patent-in-suit, district courts typically consider three factors: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly when discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*, No. CV 12-1461, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014) (citing cases).

The district court may also "balance considerations beyond those captured by the three-factor stay test." *Murata Machinery USA v. Daifuku Co.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016). "[U]ltimately the Court must decide stay requests on a case-by-case basis." *Norman IP Holdings, LLC v. TP-Link Techs., Co.*, No. 6:13-cv-384, 2014 WL 5035718, at *2 (E.D. Tex. Oct. 8, 2014); *see also Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co.*, No. SACV 17-1914, 2019 WL 116784, at *2 (C.D. Cal. Jan. 2, 2019) ("the totality of the circumstances governs") (quoting *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030–31 (C.D. Cal. 2013)); *Qualcomm Inc. v. Apple Inc.,* No. 3:17-cv-2403, 2018 WL 4104966, at *1 (S.D. Cal. Aug. 29, 2018); *Image Processing Techs., LLC v. Samsung Elecs. Co.*, No. 2:16-cv-505, 2017

WL 7051628, at *1 (E.D. Tex. Oct. 25, 2017) ("motions to stay are highly individualized matters");

*Realtime Data LLC v. Actian Corp.*, No. 6:15-cv-463, 2016 WL 9340796, at *2 (E.D. Tex. Nov.

29, 2016); *Drink Tanks Corp. v. GrowlerWerks, Inc.*, No. 3:16-cv-410, 2016 WL 3844209, at *2

(D. Or. July 15, 2016); *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, No. EDCV 14-1153,

2015 WL 1809309, at *2 (C.D. Cal. Apr. 20, 2015); *PersonalWeb Techs., LLC v. Apple Inc.*, 69

F. Supp. 3d 1022, 1025 (N.D. Cal. 2014).

## I.  The State of the Proceedings

This case is still in its early stages.  While the parties have filed a Joint Claim Construction

Disclosure, D.I. 86, no claim construction briefs have been filed.  Fact discovery has begun, and

some documents have been produced, some interrogatories have been served, and at least one

deposition has been taken.  D.I. 88 at 19–20.  However, there is still much discovery to be

undertaken.  Fact discovery does not close until September 2026, and expert discovery does not

close until December 2026.  D.I. 43.

While Omni argues that there has been significant progress in this case, the most

burdensome stages of the case—completing discovery, preparing expert reports, filing and

responding to pretrial motions, preparing for trial, going through the trial process, and engaging in

post-trial motion practice—all lie in the future.  *See Smartflash LLC v. Apple Inc.*, 621 F. App'x

995, 1005 (Fed. Cir. 2015) (holding that the district court abused its discretion when it denied a

stay prior to trial and noting that "[d]espite the substantial time and effort already spent in this

case, the most burdensome task is yet to come."); *IOENGINE, LLC v. PayPal Holdings, Inc.*, No.

18-452, 2019 WL 3943058 at *5 (D. Del. Aug. 21, 2019); *CyWee Grp. Ltd. v. Samsung Elec. Co.*,

No. 2:17-cv-140, 2019 WL 11023976, at *6–7 (E.D. Tex. Feb. 14, 2019).  Expert discovery has

not begun, and the trial is a year away, even assuming there is no slippage in the trial schedule.  In

6

such circumstances, courts have held that the state of the litigation cuts in favor of a stay. *See CallWave Commc'ns, LLC v. AT&T Mobility LLC*, Civil Action No. 12-1702, 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015) (stage of the litigation favored a stay where "[d]iscovery is more advanced than would be ideal, but . . . few depositions have been taken and expert discovery has not yet begun"); *ACQUIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 356–57 (D. Mass. 2015) (finding that the "stage of the litigation" factor weighed in favor of a stay where expert discovery had not begun, "[n]otwithstanding the fact that substantial document and written discovery has already occurred, and a claim construction opinion has been issued").

Because "it appears likely that the bulk of the expenses that the parties would incur in pretrial work and trial preparation are still in the future," and that denying a stay "would impose significant expenses on the parties that might be avoided if the stay results in the simplification (or obviation) of further court proceedings," *NFC Tech.*, 2015 WL 1069111, at *3, this factor weighs in support of a stay.

## II. Prejudice

In analyzing whether the plaintiff would suffer undue prejudice (and relatedly whether the defendant would gain an unfair tactical advantage) if a stay were granted, courts in this district have examined four factors: (1) the timing of the request for review; (2) the timing of the request for a stay; (3) the status of the review proceedings; and (4) the relationship of the parties. *Ethicon LLC v. Intuitive Surgical, Inc.*, C.A. No. 17-871, 2019 WL 1276029, at *2 (D. Del. Mar. 20, 2019); *Contour IP Holding, LLC v. GoPro, Inc.*, No. CV 15-1108, 2016 WL 4474340, at *4 (D. Del. July 14, 2016); *Princeton Dig. Image Corp.*, 2014 WL 3819458, at *4; *IOENGINE*, 2019 WL 3943058, at *5. In light of those factors, Omni makes several arguments about why granting a stay of its action against WHOOP would be prejudicial.

Omni argues that WHOOP should have been on notice of the potential for an infringement action since at least 2023 in light of similar litigation between WHOOP and a previous assignee of the '868 patent, but that WHOOP waited eight months after this case was filed before submitting its petitions challenging the asserted patents. D.I. 88 at 13. Omni further alleges that WHOOP caused prejudicial delay because WHOOP challenged only some of the asserted patents and largely relied on the Samsung petitions challenging the remaining patents. *Id*. at 13–14. Omni argues that WHOOP's delay in filing its own requests "suggests a dilatory intent," resulting in prejudice to Omni. *Id.*

In reply, WHOOP argues that it has not attempted to delay the proceedings, and that Omni's delay in filing its complaint against WHOOP undermines any suggestion that Omni would be prejudiced or would be put at a tactical disadvantage by the delay caused by a stay. D.I. 79 at 19. WHOOP argues that it filed its petitions in a timely manner, given the complexity of the respective cases and the number of claims and patents at issue, and that Samsung did the same. D.I. 79 at 17. In particular, WHOOP argues that it filed its original motion to stay within 15 days of the institution of Samsung's IPRs, and that it filed this renewed motion within 16 days of the PTO's granting reexamination of the '868 patent. *Id.* WHOOP argues that courts have routinely found that in cases of similar complexity, filing post-grant petitions within similar timeframes was not unreasonable. D.I. 97 at 6–7.

Omni's argument regarding WHOOP's delay in seeking PTO review is not persuasive. Considering the complexity entailed in seeking *inter partes* review, post grant review, and *ex parte* reexaminations while also weighing any impacts from or to the Samsung litigation and their effects on this case, a delay of eight months from the filing of the complaint is not unreasonable. *See NFC Tech.*, 2015 WL 1069111, at *4 (citing cases); *IOENGINE*, 2019 WL 3943058 at *6.

8

First, even if WHOOP was aware of the '868 patent, its awareness does not suggest that Omni was engaged in prejudicial delay when it did not immediately seek to have that patent invalidated. Given that all the asserted claims and patents in this case were also challenged by Samsung separately, Omni has not explained why it would be unreasonable for WHOOP to rely on the more advanced Samsung litigation and Samsung's petitions rather than duplicating Samsung's challenges in its own requests for review.

Second, with respect to the timing of its stay request, WHOOP filed its first motion for a stay within 26 days after filing its IPR petitions and before the PTO had issued institution decisions on the Samsung IPRs. D.I. at 1, 17. I denied that stay motion without prejudice, in large part on the ground that it was premature. D.I. 61. WHOOP filed its renewed motion within 16 days after the PTO's orders granting Samsung's IPR petitions and ordering reexamination review of the '868 patent, as requested by Samsung. D.I. 79 at 17. Omni did not suggest that WHOOP delayed filing its original stay motion, as Omni argued that motion was premature. D.I. 41 at 8. And with respect to WHOOP's present motion, which was filed promptly after the PTO acted on Samsung's petitions, Omni again argued that the motion was premature because at that time WHOOP's PGR petition directed to the '790 patent had not yet been granted. D.I. 88 at 1. Under these circumstances, I find that WHOOP was reasonably diligent in moving for the requested stay.

Third, with respect to the status of the review proceedings, the Samsung IPRs on the '533, '304, '455, '790, and '475 patents were instituted in February 2026 and will presumably be completed by February 2027. *See* 37 C.F.R. § 42.100(c). The PTO granted Samsung's EPR petition on the '868 patent in February 2026, but resolution of the EPR does not have a fixed deadline. WHOOP's PGR on the '790 patent was instituted in April 2026 and will presumably be completed by April 2027. *See* 37 C.F.R. § 42.200(c).

Considering the timing of those proceedings, the potential for the IPRs, EPR, and/or PGR to significantly affect the litigation is high. If a stay is not granted, a decision as to the validity of the asserted patents would be expected by February 2027 (in the case of Samsung's IPRs) and shortly before the scheduled trial in this case (in the case of WHOOP's PGR). The prospect that contemporaneous IPR, EPR, or PGR decisions will have a significant effect on the issues presented in the litigation counsels in favor of a stay. *See Huvepharma EOOD v. Associated Brit. Foods, PLC*, Civil Action No. 18-129, 2019 WL 3802472, at *1 (D. Del. Aug. 13, 2019) ("Plaintiffs contemplate having anticipation and obviousness tried twice, whereas a stay will mean that those issues will only need to be tried once.").

Fourth, WHOOP argues that Omni is a non-practicing entity that does not compete with WHOOP, and that Omni "will not suffer any loss of market share or erosion of goodwill [due] to a stay." D.I. 79 at 18–19 (quoting *Brit. Telecomm. PLC v. IAC/InterActiveCorp*, No. 18-366, 2019 WL 4740156, at *6 (D. Del. Sept. 27, 2019)). Omni disputes WHOOP's characterization of Omni as a non-practicing entity, although Omni does not assert that it manufactures or sells patented products. Instead, Omni asserts that it has sought to commercialize its patents by entering into partnerships with other companies. D.I. 88 at 14–16. Omni concedes that it "is not a direct competitor with WHOOP," but it asserts that "both companies exist within the same industry." D.I. 84 at 15.

Despite Omni's assertions, it has not presented any evidence that it actually practices any of the asserted patents. While even a non-practicing patent owner may be prejudiced by a delay in the vindication of its patent rights, it is nonetheless true that the interest in the enforcement of patent rights for a non-practicing entity "is not typically as strong as it is for a competitor of the accused infringer." *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452, 2020 WL 6270776 at

10

*3 (D. Del. Oct. 26, 2020).  That is because non-practicing entities such as Omni "do[] not participate in the relevant market and will not suffer any loss of market share or erosion of goodwill due to a stay."  *Princeton Dig. Image Corp.*, 2014 WL 3819458, at *6; *see also SZ DJI Tech. Co. v. Autel Robotics USA LLC*, C.A. No. 16-706, 2019 WL 1244948, at *2 (D. Del. Mar. 18, 2019) ("[T]he stay of proceedings with respect to a patent Autel does not practice will not greatly harm Autel."); *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, C.A. No. 12-cv-1107 et al., 2014 WL 1369721, at *5 (D. Del. Apr. 7, 2014) (holding that the plaintiff's status "as a non-practicing entity, rather than a market participant, suggests there is little risk that it will lose sales or goodwill in the market" if a stay is granted).

Beyond those factors, Omni argues that it would be prejudiced by the possible loss of evidence resulting from a stay, in particular because some of the accused products have been discontinued.  D.I. 88 at 16.  In addition, Omni points to the fact that Professor Mohammed Islam, Omni's CEO and the sole named inventor of the asserted patents, is 66 years old.  Omni argues that in view of Dr. Islam's age a potential multi-year stay may result in "the loss of evidence, diminishing the value of its patent rights, and may ultimately deprive Dr. Islam of his day in court."  D.I. 88 at 2, 14–15.

Unspecific assertions of possible loss of memory are not persuasive, especially in patent cases in which witnesses' recollection of historical facts ordinarily play little or no role.  Omni has not made any showing that specific evidence is likely to be lost as result of staying the district court actions pending the disposition of the IPR, and it has not provided any reason why a properly implemented litigation hold would be ineffective in preserving documentation relating to the discontinued products.  *See NFC Tech.,* 2015 WL 1069111, at *3 ("A blanket statement that evidence may become stale or be lost does not amount to a compelling showing of prejudice.").

11

The Federal Circuit has reversed findings of undue prejudice based on witnesses being "over 60" or "over 70," and has held that the age of a witness alone is normally an insufficient ground for a finding of prejudice resulting from delay. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014) ("Since when did 60 become so old? It is undoubtedly true, as many courts have observed, that with age and the passage of time, memories may fade and witnesses may become unavailable. Without more, however, these assertions here are not sufficient to justify a conclusion of undue prejudice."). Although Dr. Islam is 66 years old, there is no evidence that he is in poor health or that there is otherwise a notably higher risk than normal that he may become unavailable during the duration of this stay.

Moreover, Omni waited several years after the issuance of its patents and after initiating its actions against Apple to bring this lawsuit against WHOOP. As the Federal Circuit has stated, delays caused by the plaintiff render arguments of timely enforcement unpersuasive. *See VirtualAgility*, 759 F.3d at 1319 (undue prejudice not found where plaintiff waited nearly a year after the patent issued before bringing suit); *Lund Motion Prods.*, 2019 WL 116784, at *2 ("Plaintiff's own delay in bringing the instant action renders its arguments of undue prejudice unpersuasive.").

While the '790 and '475 patents both issued in 2025, the remaining asserted patents all issued between 2015 and 2021.[3] Yet Omni (or its related companies) did not file the first lawsuit against WHOOP until 2023, and even then asserted only one patent. See *Cheetah Omni, LLC v. WHOOP, Inc.,* No. 6-23-cv-00478 (W.D. Tex.). WHOOP's accused products have been on the

---

[3] The '868 patent issued in 2015, the '533 patent issued in 2017, the '484 patent issued in 2019, the '304 patent issued in 2020, the '455 patent issued in 2021, the '790 patent issued in 2025, and the '475 patent issued in 2025. Dkt. Nos. 11-1, 11-2, 11-3, 11-4, 11-5, 11-6, 11-13 (Exhs. 1–6, 13).

market since at least September 2015, D.I. 97 at 9, and Omni has provided no explanation for why a stay now would be prejudicial in light of Omni's decision to wait nearly a decade to file suit. There is thus little force to Omni's argument that even though it does not compete with WHOOP, a stay "would directly prejudice Omni by harming its existing business prospects and prolonging resolution of the parties' disputes, diminishing the value of Omni's Asserted Patents." D.I. 88 at 15.

Third, Omni argues that a stay would "give WHOOP a clear tactical advantage" because WHOOP, unlike Samsung, would not be subject to any form of estoppel and therefore a stay pending PTO review proceedings poses no risk to WHOOP, but only a prospective benefit. D.I. 88 at 17.

District courts that have addressed motions to stay based on third-party IPRs have reached differing conclusions as to whether a patentee would be unfairly prejudiced by the issuance of a stay if the defendant is not subject to IPR or PGR estoppel. Some courts have found that similar strategic reliance on third-party IPRs showed the parties to be engaged in "gamesmanship" by seeking "to reap the benefits of a stay pending IPR proceedings" while "refus[ing] to commit to being bound by at least some of those proceedings." *Nike, Inc. v. New Balance Athletics, Inc.*, No. 23-cv-12666, 2025 WL 1617264, at *6 (D. Mass. June 6, 2025) (citing *Koninklijke Philips N.V. v. Amerlux, LLC*, 167 F. Supp. 3d 270, 274–5 (D. Mass. 2016). In other cases, courts have found that such strategies did not "fall outside the bounds of accepted litigation tactics or otherwise result in undue prejudice." *PersonalWeb Techs., LLC v. Google Inc.*, No. 13-01317, 2014 WL 4100743, at *6 (N.D. Cal. Aug. 20, 2014).

In this case, WHOOP did not simply rely on Samsung's filings, but instead filed its own IPRs and PGR as well, although its IPR petitions were ultimately denied. Nonetheless, if a stay is

granted WHOOP would be the recipient of a windfall and would effectively reap the rewards of Samsung's IPRs without being subject to the same estoppel provision that would apply to Samsung.  The statutory estoppel provision for IPRs, 35 U.S.C. § 315(e)(2), was created by Congress to prevent a party from relitigating arguments that were settled in the IPR, and was intended to provide essentially a "'claim-preclusive effect' on subsequent invalidity challenges." Robert L. Stoll, *Maintaining Post-Grant Review Estoppel in the America Invents Act Revisited: A Call for Legislative Restraint*, 23 Fed. Circuit B.J. 15, 36 (2018) (summarizing the legislative history of the America Invents Act).  In particular, section 315(e)(2) contains a clause that subjects real parties in interest and those in privity with IPR petitioners to be bound to the same IPR estoppel requirements as the petitioner itself.  While WHOOP is not in privity with Samsung, Samsung's IPRs and interests are quite similar to its own. D.I. 37 at 2, 11 (characterizing both Samsung's and WHOOP's IPR petitions as relying "largely on the same core references over which the '533 patent family claims have already been found unpatentable" and discussing the same section in both WHOOP's and Samsung's petitions together); D.I. 79 at 1 ("WHOOP intends to file a materially identical petition for IPR . . . .").[4]

Apart from the issue of IPR estoppel, WHOOP will be subject to estoppel related to the '790 patent as a result of its instituted PGR petition.  A PGR proceeding brings with it an estoppel provision that is functionally identical to the estoppel provision for IPRs, and WHOOP's granted petition for PGR for the '790 patent will preclude WHOOP from making arguments that are raised or reasonably could have been raised during that proceeding.  35 U.S.C. § 325(e)(2).

---

[4] While WHOOP represented that it intended to join Samsung's IPRs, it apparently has not done so, and the deadline to do so has now passed.  D.I. 88 at 4.

While WHOOP is subject to statutory estoppel in connection with its PGR petition, most of the parties' focus in this case is on the potential estoppel effect of Samsung's IPR petitions as applied to WHOOP. The IPR estoppel provision does not extend by its terms to unrelated third parties, such as WHOOP. In such circumstances, however, "courts routinely find that cases should be stayed due to third-party IPRs," but when doing so, most courts have conditioned such a stay on the defendant's agreement to be bound by the IPR estoppel provisions of 35 U.S.C. § 315(e)(2) that apply to the petitioning party. *See Theta IP, LLC v. Motorola Mobility LLC*, No. 22-cv-3441, 2025 WL 3679827, at * 3 (N.D. Ill. Apr. 23, 2025); *Nike,* 2025 WL 1617264, at *6; *Polaris PowerLED Techs., LLC v. Dell Techs. Inc.*, No. 22-cv-973, 2024 WL 1546973, at *2 (W.D. Tex. Mar. 5, 2024); *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 2015 WL 1006582 (N.D. Cal. Mar. 6, 2015); *Kirsch Rsch. & Dev., LLC v, IKO Indus., Inc.,* No. 6:20-cv-317, 2021 WL 4555610, at *3 (W.D. Tex. Oct. 5, 2021); *PersonalWeb Techs., LLC v. Google Inc.*, 2014 WL 4100743, at *5.

Some courts, however, particularly in the years immediately after the enactment of the statute that created IPRs, applied a more limited form of estoppel and required that the defendant be estopped only from asserting grounds that were actually raised in the third-party IPR, and not grounds that could have been raised but were not. *E.g.*, *e-Watch, Inc. v. Lorex Canada, Inc.*, No. H-12-3314, 2013 WL 5425298, at *4–5 (S.D. Tex. Sept. 26, 2013); *Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, No. C-13-4513, 2014 WL 819277, at *5–6 (N.D. Cal. Feb. 28, 2014) ("Here, the court recognizes that Sprint is neither a real party in interest in nor privy to the IPR, and thus § 315(e)(2) does not apply. Still, the court finds that requiring Sprint to submit to a weaker estoppel foreclosing it from relitigating claims made and finally determined in the IPR proceedings is necessary to effect the PTO's interest in protecting the integrity of PTO proceedings and in preventing parties from having a 'second bite at the apple.'"); *see also Overland Storage,*

15

*Inc. v. BTD AG (Germany)*, No. 10-CV-1597, 2014 WL 12160764, at *3 (S.D. Cal. Feb. 11, 2014); *Pi-Net Int'l, Inc. v. Focus Bus. Bank*, No. C-12-4958, 2013 WL 5513333, at *2 (N.D. Cal. Oct. 3, 2013); *In re Bear Creek Techs., Inc.*, No 11-cv-721, 2013 WL 3789471, at *3 n.8 (D. Del. July 17, 2013).

I agree with the courts that have required third parties, as a condition for obtaining a stay pending IPR review, to be subject to the full estoppel that would apply to the petitioning party. As those courts have explained, the legitimate interests of the parties are best served by conditioning the grant of a stay request on WHOOP's agreement to be bound by the full scope of the section 315(e)(2) estoppel as it relates to the Samsung IPRs. Given the similarity of WHOOP's and Samsung's IPR challenges and the fact that WHOOP will already be subject to the separate estoppel provision stemming from its instituted PGR challenging the '790 patent, there is little reason to allow WHOOP to reap a windfall from Samsung's pending review proceedings before the PTAB without subjecting itself to the restrictions that would apply if the PTO had granted WHOOP's IPR petitions.

With the grant of a stay conditioned on WHOOP's agreement to be bound to any estoppel effect flowing from the Samsung IPRs, I am satisfied that the stay will not unfairly prejudice Omni.

### III. Simplification of the Issues

An important factor bearing on whether to grant a stay is whether the stay is likely to simplify the issues at trial. As I explained in *NFC Technology*,

> Congress's purpose in creating an inter partes review procedure was to allow the administrative agency that issues patents to consider new information bearing on whether those patents should be canceled or confirmed. Giving the agency the authority to consider the validity of patents in the inter partes review process was designed in large measure to simplify proceedings before the courts and to give the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation.

16

*NFC Tech.*, 2015 WL 1069111, at \*4; *see also In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985) (When the patent is concurrently involved in litigation, one function of reexamination "is to free the court from any need to consider prior art without the benefit of the PTO's initial consideration."); *IOENGINE*, 2019 WL 3943058, at \*8.

WHOOP argues that it is highly likely that some or all of the asserted claims will be invalidated as a result of Samsung's IPRs and its EPR, or by WHOOP's own PGR. In particular, WHOOP asserts that "no claims in the '533 and '484 patents have withstood IPR" and that "many of the Asserted Claims at issue in Samsung's IPRs are patentably indistinct from the claims invalidated in the Apple IPRs." D.I. 79 at 12–13. WHOOP further argues not only that the same core references used in the Apple IPRs would render the asserted claims in the Samsung IPRs invalid, but that there is also additional "highly analogous prior art" that Samsung asserted and that was not considered by the PTAB in the Apple IPR. D.I. 79 at 14. WHOOP further argues that the EPR is likely to result in cancellation or amendment of at least some of the asserted claims of the '868 patent, because historically "only about 20% of *ex parte* reexaminations result in all reexamined claims being confirmed without amendment." D.I. 79 at 14 (citing D.I. 80-7, Exh. 28).

Omni disagrees, arguing that a stay will not simplify the issues before the court. Omni bases its argument in large part on the fact that WHOOP would not be subject to estoppel related to Samsung's IPRs and that the court will be forced to deal with the same arguments that Samsung raised in its IPRs, even if the PTAB rejects those arguments when Samsung raises them in the IPR proceedings. D.I. 88 at 4–8, 12. Omni further argues that WHOOP's arguments are speculative as to the eventual outcome of the IPRs and the EPR, and that many issues would likely remain in the case if at least some claims survive. *Id.* at 9–11.

Because I am conditioning the grant of this stay on WHOOP's agreement to be bound to the IPR estoppel limitations, Omni's arguments regarding those issues are not persuasive. As other courts have held, an accused infringer's agreement to be bound by the estoppel provision serves to ensure that repetitive invalidity arguments will not be presented to the court. *E.g.*, *PersonalWeb Techs., LLC v. Google Inc.*, 2014 WL 4100743, at *5 ("should any claims survive the pending IPRs in this case, the expected efficiencies would be eviscerated should Defendants go on to bring invalidity arguments in this court that were raised or could have been raised before the PTAB. . . . [T]he court will alleviate its serious estoppel concerns by using its inherent power to condition a stay on Defendants' agreement to be bound as if they themselves had filed the relevant IPR petitions"); *Theta IP,* 2025 WL 3679827, at *2 ("Assuming that Defendants agree to [be bound by the PTAB's decisions with respect to invalidity], the second factor weighs in favor of a stay."); *Capella Photonics,* 2015 WL 1006582, at *3 ("Co-defendants' agreement to be bound by the IPR estoppel provisions alleviates any concerns this Court may have had regarding whether staying these consolidated cases would streamline these proceedings or otherwise benefit judicial economy.").

Simplification of the issues further supports conditioning the grant of WHOOP's requested stay on its agreement to be bound by the IPR estoppel provisions as well. Such an agreement will ensure that estoppel will be consistently applied across all asserted patents with the exception of the '868 patent, for which only EPR has been instituted. More consistently applied estoppel is likely to reduce the number and variations of arguments that WHOOP will make, and will likely simplify the jury instructions and reduce the burden of ensuring that the juries do not improperly weigh evidence that may apply to various asserted patents differently.

Even courts that have not required an accused infringer to agree to be bound by the estoppel provisions have often found that third-party IPRs would nonetheless simplify the issues, thus justifying granting a stay.  *E.g.*, *VPR Brands, LP v. MONQ, LLC*, 599 F. Supp. 3d 714, 719 (M.D. Tenn. 2022) ("The Court acknowledges that an IPR proceeding would be more likely to affect the outcome of this case if MONQ were a party to the proceeding. . . .  Nevertheless, the Court finds that the potential for simplification of the issues and associated conservation of resources for the Court and the parties weighs in favor of a stay.").  As one court recognized,

> whether a stay pending IPR may lead to simplification does not turn only on the immediate availability of collateral or statutory estoppel. The benefits of staying litigation pending patent reexamination include: (1) the USPTO's "particular expertise"; (2) management of discovery issues relating to the prior art; (3) likely dismissal when IPR results in "effective invalidity of the patent"; (4) increased chance of settlement based on the outcome of IPR; (5) development of an IPR record, which would likely simplify trial; (6) limited issues, defenses, and evidence in pretrial conferences; and (7) reduced litigation costs.

*Nike*, 2025 WL 1617264, at *5 (quoting *In re Body Sci. LLC Patent Lit.*, Civil Action No. 12-10536, 2012 WL 5449667, at *3 (D. Mass. Nov. 2, 2012)).

Similarly, an instituted EPR alone may be likely to "narrow the issues before the District Court," despite the fact that "unlike *inter partes* review, *ex parte* proceedings do not carry the same statutory estoppel effect."  *Jiaxing Super Lighting Elec. Appliance Co. v. All Star Lighting Supplies, Inc.*, Civil A. No. 25-12390, 2026 WL 1113700, at *5 (D.N.J. Apr. 26, 2026).

I conclude that it is highly likely that Samsung's IPRs, Samsung's EPR, and/or WHOOP's PGR will result in simplification of the district court proceedings.  That is particularly true in light of the similarities among most of the patents-in-suit.  Six of the seven asserted patents share a common specification and are related through a series of continuations.  Many of the patents also share the same or similar claim terms relevant to claim construction.  *See* D.I. 86.

19

Simplification of the district court litigation can take various forms. First, obviously, if the PTAB invalidates all the claims before it, the case will be fully resolved, and the proceedings in this court will be over. *See Fresenius USA, Inc. v, Baxter Int'l, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013).

Second, even if the PTAB does not cancel all (or even any) of the asserted claims of the patents in suit, any conclusion that the PTAB reaches will likely have an effect on the litigation by limiting the arguments that WHOOP can make, given that the stay will be conditioned on WHOOP's agreement to be bound by the estoppel provisions of the IPR and PGR statutes.

Third, and relatedly, even if the PTAB does not invalidate any of the claims in the pending proceedings, the court will benefit from the PTAB's guidance on the construction of certain claim terms. More generally, the expertise of the PTAB judges in this complex field of art is likely to be of assistance to the court. *See PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 13-cv-01356 et al., 2014 WL 116340, at *2 (N.D. Cal. Jan. 13, 2014) ("IPR provides a path to receive expert guidance from the PTO"); *Evolutionary Intelligence, LLC v. Apple, Inc.*, No. C 13-4201, 2014 WL 93954, at *2–3 (N.D. Cal. Jan. 9, 2014); *e-Watch*, 2013 WL 5425298, at *2 ("At a minimum, even assuming that all the patents-in-suit survive the reexamination intact, the USPTO's insight and expertise regarding the validity of the patents would be of invaluable assistance to this court."); *TimeBase Pty Ltd. v. Thomson Corp.*, Civil No. 07-1687, 2008 WL 1959061, at *2 (D. Minn. May 6, 2008); *see generally Ethicon, Inc.*, 849 F.2d at 1428 (even if reexamination does not lead to claim amendment or cancellation, "it could still provide valuable analysis to the district court"); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to

20

facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding).").

Fourth, the IPR proceeding may produce additional prosecution history that could assist the court in addressing the issues of claim construction and validity. *See Ethicon LLC*, 2019 WL 1276029, at *2 ("There will be additional prosecution history relating to all of the claims in this case. Some claims may be cancelled. There may be amendments.").

Finally, as alluded to earlier, allowing the PTO to adjudicate the validity of the claims before it in the IPR proceeding reduces what otherwise could be duplication of effort and possibly inconsistent results between the administrative agency and the court. *See Evolutionary Intelligence, LLC v. Apple, Inc.*, 2014 WL 93954, at *3 (a stay "will minimize the risk of inconsistent results and conserve resources"; there is "little benefit to be gained from having two forums review the validity of the same claims at the same time"); *Evolutionary Intelligence LLC v. Yelp Inc.*, No. C-13-3587, 2013 WL 6672451, at *6 (N.D. Cal. Dec. 18, 2013); *Microsoft Corp. v. Tivo Inc.*, No. 10-cv-240, 2011 WL 1748428, at *5 (N.D. Cal. May 6, 2011).

In sum, the likelihood that the IPR, EPR, and PGR proceedings will simplify this litigation and reduce the burden on the parties is sufficiently high that the I regard the "simplification of the issues" factor as cutting strongly in favor of granting a stay.

## CONCLUSION

I conclude that a stay should be granted, provided that WHOOP agrees to be bound by the estoppel related to Samsung's IPRs as if WHOOP were the party bringing those proceedings. WHOOP is directed to inform the court within 14 days of the date of this order whether it agrees to the terms imposed by the court as a condition for issuing a stay of this action. The temporary stay previously entered shall remain in effect until WHOOP's response is received.

IT IS SO ORDERED.

SIGNED this 18th day of May, 2026.


WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE

22