**LIT**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

OMNI MEDSCI, INC.,

*Plaintiff,*

v.

WHOOP, INC.,

*Defendant.*

C.A. No. 25-140 -WCB

**PLAINTIFF OMNI MEDSCI, INC.'S ANSWERING CLAIM CONSTRUCTION BRIEF**

OF COUNSEL:

Daniel S. Stringfield (Admitted *pro hac vice*)
Timothy P. Maloney (Admitted *pro hac vice*)
Daniel D. Georgiev (Admitted *pro hac vice*)
Peter Krusiewicz (Admitted *pro hac vice*)
NIXON PEABODY LLP
70 West Madison
Suite 5200
Chicago, IL 60602
dstringfield@nixonpeabody.com
tmaloney@nixonpeabody.com
dgeorgiev@nixonpeabody.com
pkrusiewicz@nixonpeabody.com
Tel: (312) 977-4400
Fax: (312) 977-4405

Elizabeth M. Chiaviello (Admitted *pro hac vice*)
Benjamin R. Holt (Admitted *pro hac vice*)
Nixon Peabody LLP
799 9th Street NW
Suite 500
Washington, D.C. 20001
echiaviello@nixonpeabody.com
bholt@nixonpeabody.com
Tel: (202) 585-8000

BAYARD, P.A.

Stephen B. Brauerman (No. 4952)
Ronald P. Golden, III (No. 6254)
Emily L. Skaug (No. 6921)
600 N. King Street, Suite 400
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com
eskaug@bayardlaw.com

***Attorneys for Plaintiff Omni MedSci, Inc.***

Fax: (202) 585-8080

William E. Davis, III (Admitted *pro hac vice*)
Ty Wilson (Admitted *pro hac vice*)
**DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, TX 75601
(903) 230-9090
bdavis@davisfirm.com
twilson@davisfirm.com

# TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION ........ 1

II. OVERVIEW OF THE ’868, ’455, AND ’475 PATENTS ........ 1

III. LEGAL STANDARDS ........ 4

IV. DISPUTED TERMS FROM THE ’868 PATENT ........ 6

- A. “position information from a location sensor” ........ 7
- B. “voice input signals” ........ 9

V. DISPUTED TERM FROM THE ’455 PATENT ........ 11

VI. DISPUTED TERM FROM THE ’475 PATENT ........ 14

- A. “Biosensor” has a Plain and Ordinary Meaning ........ 15
- B. Claim 1 Uses Permissible Functional Language ........ 17

VII. CONCLUSION ........ 18

**TABLE OF EXHIBITS**

| Exhibit No. | Exhibit Description |
|---|---|
| 1 | U.S. Patent No. 9,055,868 |
| 2 | U.S. Patent No. 11,160,455 |
| 3 | U.S. Patent No. 12,268,475 |
| 4 | Merriam-Webster's Collegiate Dictionary, Tenth Edition (1999) |
| 5 | Random House Webster's Unabridged Dictionary, Second Edition (1998) |
| 6 | Segen's Medical Dictionary (2012); American Heritage Medical Dictionary, (2007) (both available at https://medical-dictionary.thefreedictionary.com/biosensor) |
| 7 | Declaration of Dr. Igor Efimov dated August 19, 2026 |
| 8 | *Samsung Elecs. Co. et al. v. Omni MedSci, Inc.,* IPR2025-01252, Paper No. 1 (P.T.A.B. Aug. 5, 2025) ("Petition for *Inter Partes* Review") |
| 9 | *Samsung Elecs. Co. et al. v. Omni MedSci, Inc.,* IPR2025-01252, Paper No. 13 (P.T.A.B. Nov. 12, 2025) ("Patent Owner's Preliminary Response") |

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alloc, Inc. v. Int'l Trade Comm'n.*,
342 F.3d 1361 (Fed. Cir. 2003)....................11

*AllVoice Computing PLC v. Nuance Comms., Inc.*,
504 F.3d 1236 (Fed. Cir. 2007)....................6

*Aventis Pharma S.A. v. Hospira, Inc.*,
743 F. Supp. 2d 305 (D. Del. 2010)....................18

*Azure Networks, LLC v. CSR PLC*,
771 F.3d 1336 (Fed. Cir. 2014)....................4

*BASF Corp. v. Johnson Matthey Inc.*,
875 F.3d 1360 (Fed. Cir. 2017)....................15

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*,
249 F.3d 1341 (Fed. Cir. 2001)....................5

*Bioverativ Inc. v. CSL Behring LLC*,
No. 1:17-CV-00914-RGA, 2019 WL 1276030 (D. Del. Mar. 20, 2019) ....................12

*Constant v. Advanced Micro-Devices, Inc.*,
848 F.2d 1560 (Fed. Cir. 1988)....................5

*Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*,
809 F.3d 1223 (Fed. Cir. 2015)....................5, 6

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*,
435 F.3d 1366 (Fed. Cir. 2006)....................5

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014)....................4

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
430 F.3d 1377 (Fed. Cir. 2005)....................17

*K-2 Corp. v. Salomon S.A.*,
191 F.3d 1356 (Fed. Cir. 1999)....................10

*Laitram Corp. v. NEC Corp.*,
163 F.3d 1342 (Fed. Cir. 1998)....................6

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004)....................5

*Markman v. Westview Instruments., Inc.*,
517 U.S. 370 (1996)....................4, 6

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) (en banc)....................4

*MasterMine Software, Inc. v. Microsoft Corp.*,
874 F.3d 1307 (Fed. Cir. 2017)....................17, 18

*Microsoft Corp. v. i4i Limited Partnership*,
564 U.S. 91 (2011)....................5

*Nautilus, Inc. v. Biosig Instr., Inc.*,
572 U.S. 898 (2014)....................5, 6, 15

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
30 F.4th 1339 (Fed. Cir. 2022) ....................15

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)....................4

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc)....................4

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015)....................5

*Thorner v. Sony Computer Ent. Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012)....................4, 6, 10

*UltimatePointer, L.L.C. v. Nintendo Co.*,
816 F.3d 816 (Fed. Cir. 2016)....................17

## I. INTRODUCTION

Pursuant to this Court's Amended Scheduling Order (D.I. 111), Plaintiff Omni MedSci, Inc. ("Omni") hereby submits its answering claim construction brief regarding U.S. Patent Nos. 9,055,868 ("'868 Patent"), 11,160,455 ("the '455 Patent"), and 12,268,475 ("the '475 Patent") (attached as Exhibits 1-3). Omni's constructions of the four disputed terms are correct and fully supported by the intrinsic evidence and the controlling law. For one term, an expert declaration from Dr. Igor Efimov (Ex. 7) confirms that Omni's construction is consistent with the understanding of that term by a person of ordinary skill in the art ("POSITA"). For the reasons provided below, the Court should adopt Omni's proposed constructions for each of the four terms.

## II. OVERVIEW OF THE '868, '455, AND '475 PATENTS

The '868 Patent discloses diagnostic systems for noninvasively measuring, processing, transmitting, and storing a user's physiological parameters. Ex. 1 at Abstract, 6:14–31, 24:35–25:2. For example, Figure 1 of the '868 Patent discloses an exemplary diagnostic system including control system 100, medical device 10 with sensors, communication links 45, 55, and 65, and host 70:



FIG. 1

Ex. 1 at Abstract, FIG. 1, 5:44–6:31, 8:56–9:3. A diagnostic system further includes semiconductor diodes and a software application operating on control system 100. Ex. 1 at Abstract, 8:56–9:3, 22:15–27. Host 70 "may be capable of collecting, entering, processing, storing, retrieving, amending, and/or dispatching medical data during a medical procedure." Ex. 1 at Abstract, 7:25–38.

The '455 and '475 Patents similarly disclose systems and devices for non-invasive measurements of a person's physiology. Ex. 2 at 35:66–36:17; Ex. 3 at 35:13–31. An exemplary physiological measurement system is depicted in Figure 24 of the '455 Patent:




FIG. 24

Ex. 2 at Fig. 24; Ex. 3 at Fig. 24. The system includes a measurement device, a personal device, and a cloud server. Ex. 2 at 36:39–56; Ex. 3 at 35:32–36:3. The measurement device includes a light source which includes semiconductor diodes that emit light and a detection system for detecting the light. Ex. 2 at 8:29–44; Ex. 3 at 8:47–61. The light source directs the light to the person's tissue, which reflects a portion of the light back to the detection system. Ex. 2 at 8:39–44; Ex. 3 at 8:50–55. The physiological measurements are based on the light's interaction with the tissue. Ex. 2 at 15:62–16:11; Ex. 3 at 15:25–41. The detection system generates a signal in response to the detected light. Ex. 2 at 8:39–44; Ex. 3 at 8:53–57. The signal-to-noise ratio of that signal may be improved by the wearable measurement device via various techniques disclosed in the patents. *See, e.g.,* Ex. 2 at 59:4–23; Ex. 3 at 58:1–20.

## III. LEGAL STANDARDS

The construction of patent claim language is a question of law for the Court. *Markman v. Westview Instruments., Inc.*, 517 U.S. 370, 387–88 (1996). To ascertain the meaning of claims, courts look to three primary sources: the claims, the specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc); *aff'd*, 517 U.S. at 390.

Claim construction begins with the actual words of the claims. The general rule is that claim terms are given their plain and ordinary meaning as understood by a person of ordinary skill in the art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959, 959 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time"). The "only two exceptions to [this] general rule" are when the patentee either acts as their own lexicographer or disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). The Federal Circuit has counseled that "[t]he standards for finding lexicography and disavowal are exacting." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term" and "clearly express an intent to [define] the term." *Thorner*, 669 F.3d at 1365 (quotations omitted).

The Court may be required to describe the plain and ordinary meaning of a claim term when the term has more than one "ordinary" meaning or when reliance on a term's ordinary meaning does not resolve the parties' dispute. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). However, when the plain and ordinary meaning of the disputed claim language is clear, it is appropriate to resolve the dispute by declining to construe

the claim term. *See, e.g.*, *Summit 6, LLC v. Samsung Elecs. Co*., 802 F.3d 1283, 1291 (Fed. Cir. 2015) (district court did not err by declining to construe disputed claim language whose plain and ordinary meaning is clear); *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc*., 249 F.3d 1341, 1349 (Fed. Cir. 2001) (district court did not err in declining to construe the term "melting" used in a way that did not depart from its ordinary meaning).

"Although the specification may aid the court in interpreting the meaning of disputed claim language … particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Additionally, any indefiniteness allegations must focus on the meaning of the disputed claim terms to persons of ordinary skill in the art. *Energizer Holdings, Inc. v. Int'l Trade Comm'n,* 435 F.3d 1366, 1370 (Fed. Cir. 2006). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instr., Inc.*, 572 U.S. 898, 901 (2014). The "definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable." *Id*. at 910. Some "modicum of uncertainty" is permitted. *Id*. at 909.

Further, WHOOP must overcome the presumption of validity of the disputed claims. 35 U.S.C. § 282. Thus, WHOOP must prove its "indefiniteness" contentions by clear and convincing evidence. *Microsoft Corp. v. i4i Limited Partnership,* 564 U.S. 91, 95 (2011); *Dow Chem. Co. v.*

*Nova Chemicals Corp. (Canada)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015). The Supreme Court in *Nautilus* recognized the importance of expert analysis regarding indefiniteness challenges. *Nautilus*, 572 U.S. at 911 (citing *Markman*, 517 U.S. at 389 ("claim construction calls for 'the necessarily sophisticated analysis of the whole document,' and may turn on evaluations of expert testimony.")).

## IV. DISPUTED TERMS FROM THE '868 PATENT

Claim 7 of the '868 Patent recites a diagnostic system comprising "a control system adapted to receive, store and process at least a portion of the physiological information." Ex. 1 at 24:49–51. The recited control system has "a touch-screen, circuitry for obtaining *position information from a location sensor*, and a wireless transceiver." *Id*. at 24:51–55 (emphasis added). The control system is also "capable of receiving *voice input signals* and manually entered input signals." *Id*. at 24:56–58 (emphasis added).

WHOOP proposes constructions to improperly narrow the terms "position information from a location sensor" and "voice input signals" based on particular embodiments disclosed in the specification. However, a basic tenet of claim construction instructs that details disclosed in the specification should not be imported into the claims because it is "the *claims*, not the written description, which define the scope of the patent right." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998); *AllVoice Computing PLC v. Nuance Comms., Inc.*, 504 F.3d 1236, 1248 (Fed. Cir. 2007) ("every claim need not contain every feature taught in the specification"). Claims should not be rewritten to add unrecited limitations. Rather, the intentional omission from the claim language of a particular detail in the specification must be given effect. *Thorner*, 669 F.3d at 1366 ("We do not read limitations from the specification into claims; we do not redefine words. Only the patentee can do that."). Accordingly, WHOOP's proposed constructions should be rejected.

### A. "position information from a location sensor"

| Term | Omni's Construction | WHOOP's Construction |
|---|---|---|
| "position information from a location sensor"<br><br>'868 Patent, claim 7 | Plain and ordinary meaning | "information from a sensor regarding the position of a diagnostic component relative to the user's body" |

Claim 7 recites a control system which has "circuitry for obtaining position information from a location sensor." Ex. 1 at 24:51–53. The phrase "position information from a location sensor" does not require construction and should carry its full plain and ordinary meaning as understood by the relevant POSITA. WHOOP makes no attempt to show that its proposed construction reflects the disputed claim language or derives from the context of the claim as a whole. As its purported justification for focusing on details appearing only in the specification, WHOOP asserts that "the claim language does not independently attribute a meaning to 'position information' or 'location sensor.'" D.I. 114 at 8. The claim language does have meaning, and it means what it says. The chosen language includes any type of position information obtained from a sensor that determines location. The claim language does *not* refer to a "diagnostic component" or restrict the "position information" to only information regarding "the position of a diagnostic component relative to the user's body."

The specification provides no reason for limiting the unambiguous claim language. The specification itself belies WHOOP's assertion that every disclosure of position information refers to a medical device's position relative the user's body. *See* D.I. 114 at 8–9. While the specification discloses that the position information may reflect the proximity of system components to the user's body, it does not limit the invention to a system that uses position information or location sensor for that purpose. The specification more broadly refers to the general positioning of system components:

> In various embodiments, the one or more sensors and the control circuitry may be capable of providing positioning information to a medical professional and/or a controller, such as system controller 90. … In some cases, the one or more sensors may be capable of detecting and/or alerting a medical professional or a controller when medical device 10 is in close proximity to and/or in contact with tissue.

Ex. 1 at 6:17–27. The first sentence in the foregoing disclosure does not limit the positioning information merely to proximity of a medical device to a user's body. The last sentence of the passage confirms that location sensors are used in that manner in only "some cases." *Id.*; *see also, e.g.*, *id*. at 15:22–28 (describing that data 514 communicated by medical devices 570 "may comprise, for example, positioning data . . . or any other data capable of being collected by medical device 570" without restriction as to the type of positioning data).

Additionally, the specification discloses a broad array of sensor types:

> Sensors 442 can comprise *any device capable of providing data and/or a signal* to a medical professional. Sensors 442 may be capable of generating and transmitting, for example, positioning information associated with insertable portion 420, physiological information associated with the patient, control signals, a signal indicating the presence or absence of blood, *or any other data*. In one particular embodiment, sensors 442 are capable of generating and transmitting data associated with insertable portion's 420 proximity to tissue of the patient.

*Id*. at 13:31–37 (emphasis added). This further confirms that "proximity to tissue of the patient" is only one type of position information that the disclosed and claimed location sensors may generate. Furthermore, claim 13 depends from independent claim 7 and describes the control system being coupled to a "proximity sensor." *Id*. at 25:25–26. Under the doctrine of claim differentiation, this also shows that "location sensor" in claim 7 is not limited to a sensor that detects proximity to the user's body.

WHOOP's argument that claim 7 must be construed narrowly based on the specification to exclude "GPS technology" or "map location technology" also lacks merit. *See* D.I. 114 at 9. The specification discloses that a sensor "can comprise any device capable of providing data and/or

a signal" including "positioning information" and "any other data." Ex. 1 at 13:31–40. The disclosure and related teachings regarding sensors for providing "positioning information" certainly does not exclude "GPS technology" or "map location technology," and WHOOP does not attempt to show that either type of sensor technology was disclaimed in the specification or during prosecution. Accordingly, the Court should reject WHOOP's improperly narrowing construction.

**B. "voice input signals"**

| Term | Omni's Construction | WHOOP's Construction |
|---|---|---|
| "voice input signals"<br><br>'868 Patent, claim 7 | Plain and ordinary meaning<br><br>If construed:<br><br>"signals generated from voice input" | "signals that enable voice control of a medical device" |

Claim 7 also recites a control system "capable of receiving voice input signals." Ex. 1 at 24:56–57. The "voice input signals" claim language does not require construction and should carry its full plain and ordinary meaning as understood by the relevant POSITA. If the Court determines that a construction is necessary, the term should be construed plainly to mean "signals generated from voice input." WHOOP's proposed construction improperly adds a limitation regarding "control of a medical device" found nowhere in the claim and not required by the intrinsic record, and should thus be rejected.

As a threshold matter, WHOOP fails to establish that the plain meaning of "voice input signals" is unclear such that construction is appropriate. As WHOOP concedes, claim 7 "recites a control system capable of receiving at least two different types of 'input signals': 'voice input signals' and 'manually entered input signals.'" D.I. 114 at 4–5. A POSITA would readily understand from this context that voice input signals are signals generated from a user's voice as

differentiated from signals derived from keystrokes or other manual input. Omni is entitled to the full scope of this unambiguous claim language.

There is no claim language that would lead a POSITA to WHOOP's restrictive proposed construction. WHOOP concedes that "claim 7 does not use the term 'medical device,'" but nonetheless attempts to add "medical device" as a claim limitation. D.I. 114 at 5. This redrafting of the claim should be rejected. *Thorner*, 669 F.3d at 1366 ("We do not read limitations from the specification into claims; we do not redefine words. Only the patentee can do that."); *see also*, *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee.").

Claim 7 also does not recite language directed to "signals that enable voice control" of any particular device. The claim recites more broadly a "control system … *capable of receiving* voice input signals." Ex. 1 at 24:56–57 (emphasis added). This language requires a control system capable of receiving signals generated from voice input; it does not dictate what the control system does with the voice input signals. Consistent with the claim language, Omni's position clarifies what voice input signals are without restricting what such signals are used for.

WHOOP's reliance on the specification is also misplaced. The recited control system's capability of receiving voice input commands relates to the disclosed communication components, which generate signals in response to input from a voice:

> [S]ystem 100 also includes communication device 50 that enables a medical professional to communicate with host 70. Communication device 50 can comprise any device that enables a medical professional to communicate with host 70. Communication device 50 may comprise, for example, a telephone, a wireless device, a voice-over-IP device, a unidirectional microphone attached to a headset worn by a medical professional, a bi-directional microphone, or any other suitable communicating device or combination of devices.

*Id*. at 8:35–44; *see also id.* at 4:37–41 (system includes "a communication device capable of

receiving one or more input signals from a user.”). This disclosure is consistent with the understanding that “voice input signals” are signals communicated to the system hardware that are derived from a person’s voice. The specification also indicates that host 70 has other functions in addition to contributing to the manipulation of a medical device 70:

> For example, host 70 may be capable of at least partially contributing to the manipulation of medical device 10. In other embodiments, host 70 may be capable of collecting, entering, processing, storing, retrieving, amending, and/or dispatching medical data during a medical procedure.

*Id*. at 7:23–28. Nothing in these disclosures or the specification as a whole would lead a POSITA to conclude that voice input signals are limited to signals enabling voice control of a medical device.

Finally, WHOOP’s reliance on *Alloc* is misplaced. *Alloc* concerns specification disclaimer. *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1369–70 (Fed. Cir. 2003). There, the Federal Circuit acknowledged that “it is impermissible to read the one and only disclosed embodiment into a claim without other indicia that the patentee so intended to limit the invention” but did so because the specification criticized the prior art due to its lack of the element at issue. *Id*. Unlike the patent-in-suit in *Alloc*, the specification of the ’868 Patent does not distinguish the prior art based on “signals that enable voice control” of any particular device. Further, as explained above, the specification discloses voice communications that do not control any devices.

## V. DISPUTED TERM FROM THE ’455 PATENT

| Term | Omni’s Construction | WHOOP’s Construction |
|---|---|---|
| “a light source comprising a driver and a plurality of semiconductor sources”<br><br>’455 Patent, claim 1 | Plain and ordinary meaning | “a light source containing a driver within it” |

Claim 1 of the ’455 Patent recites a system for measuring physiological parameters

comprising "a wearable device … including a light source comprising a driver and a plurality of semiconductor sources." Ex. 2 at 86:45–48. WHOOP seeks to redraft the straightforward language "a light source comprising a driver and a plurality of semiconductor sources" as if it had read "a light source containing a driver within it." WHOOP's proposal should be rejected out of hand because it unjustifiably removes the "plurality of semiconductor sources" language from the claim. The specification passages cited by WHOOP confirm that the semiconductor sources generate optical light. The recited "light source" term refers to a subsystem that comprises both a driver and semiconductor sources. By removing the "semiconductor sources" language, WHOOP's proposal risks juror confusion regarding the very nature of the recited "light source."

WHOOP's additional proposal to rewrite "comprising" to "containing . . . within it" should also be rejected. D.I. 114 at 12. WHOOP's position misrepresents Omni's arguments in response to a third party's *inter partes* review ("IPR") petition, which WHOOP has quoted sparingly and without context. WHOOP argues that the following statement by Omni in response to the IPR petition is a "disclaimer of claim scope" (*Id*. at 13): "Lisogurski does not disclose that drive circuitry 120 (the alleged 'driver') is *included* in light source 130 (the alleged 'light source') *as required* in claim 1." Ex. 9 at 16 (emphasis added). But, stating that a claim, which recites the term "comprising" before a particular element, requires "including" that element is not a form of disclaimer; it is simply using "including" as a synonym for "comprising." This District has previously construed "comprising" to mean "including but not limited to," in accordance with its plain and ordinary meaning. *Bioverativ Inc. v. CSL Behring LLC*, No. 1:17-CV-00914-RGA, 2019 WL 1276030, at *8 (D. Del. Mar. 20, 2019).

WHOOP identifies three other statements, but rather than disclaiming claim scope, they merely identify the flaws in the IPR petition's arguments. In the IPR, *the petitioners* were the first

to raise the "within [a] light source" language, stating that alleged prior art reference Lisogurski "teaches 'light drive circuitry 120,' which a POSITA would have understood (or at least found obvious) to be *within light source 130*…." Ex. 8 at 31 (emphasis added). The petitioners offered the following annotated illustration of the components in Lisogurski:




*Id.* at 26.

The statements made by Omni were addressing the petitioners' argument that Lisogurski would have been understood to disclose or suggest locating drive circuitry "within light source 130." For example, Omni pointed out that the petition "does not assert that a POSITA would have been motivated to relocate Lisogurski's drive circuitry 120 to within light source 130." Ex. 9 at 19. Omni argued that the petitioners' assertion was unsupported by another of their cited references, which "only teaches locating 'light driver circuit in [a] probe,' not specifically within a light source," per petitioners' own parenthetical for that reference. *Id.* at 19–20. Omni argued that "[b]ased on [Lisogurski's] full teaching, a POSITA would not have been motivated to relocate drive circuitry 120 into light source 130 as Petitioners assert …." *Id.* at 23. In other words, Omni

generally argued that the petitioners' evidence and reasoning did not support their assertions regarding locating Lisorgurski's driver within its disclosed light source. In doing so, Omni never characterized the light source element of claim 1 as having other than its plain and ordinary meaning or as requiring a light source "containing a driver within it." Because Omni did not clearly and unmistakably disclaim any of the scope of claim 1 by attempting to distinguish the prior art, WHOOP's caselaw is inapplicable and its proposed construction should be rejected.

## VI. DISPUTED TERM FROM THE '475 PATENT

| Term | Omni's Proposal | WHOOP's Proposal |
|---|---|---|
| "one or more biosensors adapted to be placed on the user, wherein one or more physiological parameters are measured, wherein measuring of the one or more physiological parameters comprises a differential measurement, and wherein the one or more physiological parameters comprises a pulse rate monitoring and a blood flow measurement"<br><br>'475 Patent, claim 1 | Not indefinite | Indefinite |

Claim 1 of the '475 Patent recites an "apparatus adapted to be worn by a user comprising: one or more biosensors adapted to be placed on the user." Ex. 3 at 85:11–12. It also recites "wherein one or more physiological parameters are measured, wherein measuring of the one or more physiological parameters comprises a differential measurement, and wherein the one or more physiological parameters comprises a pulse rate monitoring and a blood flow measurement." *Id.* at 85:13–18. WHOOP argues that "the 'biosensor' limitation is indefinite," but WHOOP fundamentally misunderstands the claim language. D.I. 114 at 15. WHOOP's indefiniteness arguments are unavailing because (1) the term "biosensor" has a plain and ordinary meaning in the relevant art and (2) claim 1 uses permissible functional language to describe the capabilities of the claimed apparatus.

### A. "Biosensor" has a Plain and Ordinary Meaning

WHOOP argues that "a POSA would not have understood with reasonable certainty what a biosensor is." D.I. 114 at 16. WHOOP's expert, Dr. Mercier, opines (without support) that a POSITA "would have understood the term 'biosensor' to be a context-specific term what would not have connoted a particular structure." D.I. 115 at ¶ 48. Dr. Mercier further states that "it would have been necessary to look to the context in which the term 'biosensor' is being applied." *Id*. Dr. Mercier appears to suggest that there are different types of biosensors, and WHOOP appears to argue that because there are allegedly different types of biosensors, the term "biosensor" is indefinite. But, that is incorrect.

The term "biosensor" has a plain and ordinary meaning. The claim language and specification are instructive. Claim 1 requires that at least one biosensor is adapted to be placed on a user as part of an apparatus. Ex. 3 at 85:11–12. The specification states that "non-invasive devices may be part of a series of biosensors applied to the patient, and … [t]he biosensors and non-invasive devices may communicate to a smart phone, tablet[, etc.]." *Id*. at 35:17–25. Thus, the claim broadly includes any type of biosensor device that is adapted to be placed on a user. But, "breadth is not indefiniteness." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017). The Federal Circuit has explained that "a claim is not indefinite just because it is broad." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1347 (Fed. Cir. 2022). Instead, the indefiniteness inquiry involves whether a claim "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 901. That the claim language captures different types of sensors does not mean that it fails to inform, with reasonable certainty, about the scope of the invention.

Dr. Efimov confirms that "biosensor" has an established meaning as a "device that senses information about the biological characteristics of a subject." Ex. 7 at ¶ 46. He identifies four

dictionary definitions that are consistent with his understanding and the understanding of POSITA:

| **Dictionary** | **Definition** |
|---|---|
| Merriam-Webster's Collegiate Dictionary, Tenth Edition (1999), Ex. 4 at 4. | "a device that is sensitive to a physical or chemical stimulus (as heat or an ion) and transmits information about a life process" |
| Random House Webster's Unabridged Dictionary, Second Edition (1998), Ex. 5 at 5. | "a device that senses and transmits information about a biological process, as blood pressure, of an individual under observation." |
| American Heritage Medical Dictionary, (2007), Ex. 6 at 5. | "A device that detects, records, and transmits information regarding a physiological change or process." |
| Segen's Medical Dictionary (2012), *Id.* | "A sensor which collects data on a biologic or physiologic process—e.g., blood pressure, temperature, etc." |

*Id*. at ¶ 47. These definitions demonstrate that "biosensor" has a plain and ordinary meaning, and that WHOOP's caselaw—*IBSA Institut Biochimique* and *Kaavo*—is inapposite.

WHOOP emphasizes that claim 1 recites a biosensor element that is separate and distinct from the recited light source and detection system elements. However, WHOOP does not establish or explain why a POSITA supposedly could not determine the scope of claim 1 with the understanding that the claim requires both a light source/detection system and one or more separate biosensors. A POSITA would have no difficulty understanding these requirements or determining whether an accused apparatus satisfies them. *Id*. at ¶¶ 50–52.

WHOOP asserts that the claimed biosensor must perform pulse rate monitoring, blood flow measurement, and differential techniques that are recited as capabilities of the detection system. However, as explained by Dr. Efimov, the claim attributes those functional capabilities to the detection system only and not to the one or more biosensor components. *Id*. at ¶ 50–52. Thus, there is no inconsistency or uncertainty with the claim language.

WHOOP admits that its understanding of the claim language "is not clear" and argues that "the only structures that a POSA reading the patent would have understood could perform the

functions attributed to the 'biosensor' in claim 1 are the 'detection system' or the 'detection system' in combination with the light source." *Id*. But, the claim language is not attributing such "functions" to the biosensors; only WHOOP is. Thus, WHOOP has not proved by clear and convincing evidence that claim 1 is indefinite.

**B. Claim 1 Uses Permissible Functional Language**

WHOOP also argues that "claim 1's mixed use of structural and functional language leaves the scope of infringement uncertain." D.I. 114 at 17. WHOOP relies on *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383–84 (Fed. Cir. 2005), where a claim covering both an apparatus and method of use of that apparatus was invalidated for indefiniteness.

WHOOP appears to argue that the claim language that "wherein one or more physiological parameters are measured" and related language referring to a differential measurement and pulse rate monitoring and blood flow measurement are functional "steps" that must be performed. According to WHOOP, these actions render the claim indefinite because they are not linked to a particular structure. *Id*. at 18. WHOOP is incorrect because claim 1 indeed links that claim language to particular structure—the light source and detection system. Accordingly, a POSITA would understand that claim 1 requires that the light source and detection system have the capability of performing the aforementioned measurement of the physiological parameters. And, "[i]f an apparatus claim is clearly limited to an apparatus possessing the recited structure and *capable* of performing the recited functions, then the claim is not invalid as indefinite." *UltimatePointer, L.L.C. v. Nintendo Co.*, 816 F.3d 816, 826 (Fed. Cir. 2016) (internal quotation marks omitted).

WHOOP's caselaw is inapposite: "the claims in *IPXL Holdings* ("the user uses the input means") and *Katz* ("said individual callers digitally enter data") focus on specific actions performed by the user." *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1316 (Fed.

Cir. 2017). And, the Federal Circuit has distinguished *IPXL Holdings*[1] and *Katz*, where, as here, the claims "do not claim activities performed by the user." *Id*. Thus, there is no uncertainty regarding when infringement occurs, and claim 1 is not invalid as indefinite.

## VII. CONCLUSION

For the foregoing reasons, Omni respectfully requests that the Court adopt its claim construction positions and reject WHOOP's positions.

[1] *Aventis* is similarly distinguishable because the court explained that the claims at issue there recited "formed or is used to form" and thus "f[e]ll squarely within the category of indefinite claims discussed in *IPXL Holdings*." *Aventis Pharma S.A. v. Hospira, Inc.*, 743 F. Supp. 2d 305, 330 (D. Del. 2010), *aff'd,* 675 F.3d 1324 (Fed. Cir. 2012).

Dated: August 19, 2026

OF COUNSEL:

Daniel S. Stringfield (Admitted *pro hac vice*)
Timothy P. Maloney (Admitted *pro hac vice*)
Daniel D. Georgiev (Admitted *pro hac vice*)
Peter Krusiewicz (Admitted *pro hac vice*)
NIXON PEABODY LLP
70 West Madison
Suite 5200
Chicago, IL 60602
dstringfield@nixonpeabody.com
tmaloney@nixonpeabody.com
dgeorgiev@nixonpeabody.com
pkrusiewicz@nixonpeabody.com
Tel: (312) 977-4400
Fax: (312) 977-4405

Elizabeth M. Chiaviello (Admitted *pro hac vice*)
Benjamin R. Holt (Admitted *pro hac vice*)
NIXON PEABODY LLP
799 9th Street NW
Suite 500
Washington, D.C. 20001
echiaviello@nixonpeabody.com
bholt@nixonpeabody.com
Tel: (202) 585-8000
Fax: (202) 585-8080

William E. Davis, III (Admitted *pro hac vice*)
Ty Wilson (Admitted *pro hac vice*)
**DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, TX 75601
(903) 230-9090
bdavis@davisfirm.com
twilson@davisfirm.com

BAYARD, P.A.

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (No. 4952)
Ronald P. Golden, III (No. 6254)
Emily L. Skaug (No. 6921)
600 N. King Street, Suite 400
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com
eskaug@bayardlaw.com

***Attorneys for Plaintiff Omni MedSci, Inc***.